FRANK PRIDDY, Respondent, v. MINERS' AND
MERCHANTS' BANK, Appellant.

**Kansas City Court of Appeals, June 8, 1908.**

1. **BILLS AND NOTES: Mortgagor's Conveyance: Assumption of
   Debt: Action.**  Where the grantee of a mortgagor assumes the
   secured note he becomes the principal maker and the mort-
   gagor his surety, and the holder can sue such grantee.

2. ————: ————: ————: **Payment.**  But where such note is paid
   from another source at or after the conveyance the indebted-
   ness is extinguished and there is nothing to assume; and the
   fact that the grantee may rid himself of the obligation to pay
   for the land, cannot affect the holder of the note who has re-
   ceived his pay.

3. ————: ————: ————: ————: **Bankruptcy: Action.**  Where
   the holder of a note upon foreclosure of a chattel mortgage
   turned over the proceeds to the mortgagee's trustee in bank-
   ruptcy, such proceeding did not liquidate the note and the
   holder could pursue the mortgagor's grantee who had assumed
   the note.

4. ————: ————: ————: ————: **Conversion of Mortgaged Prop-
   erty: Fraud.**  Where a mortgagee converts the mortgaged per-
   sonalty it is a discharge *pro tanto* of the secured debt and to
   that extent relieves the grantee in a real estate mortgage who
   had assumed the debt; and the fact that the mortgagor's title
   to the personalty may have been voidable by reason of fraud
   will not affect the transaction.

Appeal from Jasper Circuit Court.—*Hon. Hugh
Dabbs,* Judge.

REVERSED AND REMANDED (*with directions*).

*H. H. Bloss* for appellant.

(1) Agreeing to pay a debt in a deed which the grantee accepts, makes a contract and the relation of principal and surety then exists between the mortgagor grantor, which was Paul in this case, and the grantee, Mr. Priddy. Nelson v. Brown, 140 Mo. 580; Pratt v. Conway, 148 Mo. 291; Orrick v. Durham, 79 Mo. 174; Greenwell v. Heritage, 71 Mo. 459; Bank v. Petit, 85 Mo. App. 508; Bank v. Edwards, 84 Mo. App. 470; Dickison v. Fisher, 137 Mo. 342; Sloan v. Campbell, 71 Mo. 387. (2) We have here a principal, Mr. Priddy, claming that the property of Mr. Paul, his surety, should be held to the payment of the debt that Mr. Priddy had agreed to pay, while the latter retains the real estate that he received as a consideration for the assumption of this debt. (3) A person defrauded, has a right to reclaim the goods out of which he was defrauded from the fraudulent grantee or his trustee in bankruptcy, who simply steps in the fraudulent grantee's shoes in respect to the right to retain such property so acquired. Montgomery v. Machine Works, 92 U. S. 257; In re Cavegnaro, 143 Fed. 668; Donaldson v. Farrell, 93 U. S. 631. (4) The same rules of law obtain in Missouri as decided by our courts as those applied by the Federal and United States courts. Hence Paul being insolvent at the time he purchased this stock from Mr. Hawkins and having induced the sale by means of fraudulent representations as to existing facts as shown by this offer, which must be considered as true for the purposes now before the court, the title to this property did not pass to Paul. Mfg. Co. v. Troll, 77 Mo. App. 345; Stein Block & Co. v. Hill, 100 Mo. App. 28; Reid & Co. v. Lloyd, 67 Mo. App. 513; Elsass v. Harrington, 28 Mo. App. 432; Leedom v. Ward, 38 Mo. App. 95; Dry Goods Co. v. Jacobs, 66 Mo. App.

362. (5) Equity deals with the substance of transactions and treats their forms as of secondary importance. Railway v. Gracy, 126 Mo. 485; Baird v. Given, 170 Mo. 302; Pomeroy v. Benton, 57 Mo. 551. (6) Expressing this same principle in another way the courts have held that even if the proceedings have been irregular, yet, if the substantial rights of the parties have not been violated, they cannot complain. Warder v. Supervisors, 14 Wis. 618; Buck v. Railway, 86 Ill. 360; Taylor v. Secor, 92 U. S. 575; Railway v. Scammon, 45 Kan. 481.

*James A. Potter* and *Edw. J. White* for respondent.

(1) The judgment of the trial court was proper and it was the only judgment that could have been rendered under the evidence in this case. (2) It is well-settled law in this State that a mortgage is at most merely a security for the payment of the debt. Kennett v. Plummer, 28 Mo. 145; Ward v. Hildebrand, 46 Mo. 284; Land Co. v. Zeitler, 182 Mo. 268. (3) And when the debt which the mortgage is given to secure is paid, the mortgage, *ipso facto,* becomes void and the lien is thereby extinguished. McNarr v. Picotte, 33 Mo. 71; Durette v. Briggs, 47 Mo. 356; McClure v. Logan, 59 Mo. 234; Baker v. Halligan, 75 Mo. 435; Johnson v. Johnson, 81 Mo. 331; Pease v. Iron Co., 49 Mo. 124; Huber v. Pickler, 94 Mo. 382; Wells v. Estes, 154 Mo. 299; Kempf v. Ins. Co., 41 Mo. App. 31; Brown v. Bank, 66 Mo. App. 431; Seeser v. Southwick, 66 Mo. App. 670; 3 Pomeroy, Equity (2 Ed.), secs. 1212-13. (4) Foreclosure of a mortgage by whatever method, operates as a payment of the mortgage debt to the extent of the value of the property sold. 9 Encyc. Pl. & Pr., pp. 125-6; 4 L. R. A. (O. S.), note, page 205, and the cases there cited. (5) Proceeds derived from mortgage security must be applied on the payment of the mortgage debt. Jones on Pledges & Securities (2

Ed.), sec. 632; Jones on Chattel Mortgages (3 Ed.), sec. 640; Jones on Mortgages (2 Ed.), secs. 904-12; Saffer v. Lambert, 111 Ill. App. 410; Lyon v. Bass, 89 S. W. 849; Berner v. Bank, 101 N. W. 156. Money realized on a sale under a mortgage must first be applied on the notes first due, and then only on the others. Print. Co. v. Reeder, 44 Mo. App. 329; Clarkson v. Mullin, 62 Mo. App. 622; Moore v. Ryan, 31 Mo. App. 474. (6) Where chattels are mortgaged to secure a debt, a taking and retaining them, without a foreclosure, will operate as a payment of the mortgage debt to the amount of the value of the property. Loudon v. White, 101 Ind. 249; Hunt v. Nevers, 15 Pick. Mass. 500; Wright v. Storrs, 32 N. Y. 691; Dismukes v. Wright, 3 Dev. & B. L. N. Car. 78; Groh & Son v. Tildman, 40 Misc. N. Y. 303; Babcock v. Wells, 25 R. I. 23; 18 Am. and Eng. Ency. of Law, pp. 155-6; Bank v. McKenney, 78 Me. 442; Matheson v. Thompson, 20 Fla. 790; Ledyard v. Chapin, 6 Ind. 320; Marriott v. Handy, 8 Gill. 31; Cohn v. Souders, 175 Mo. 455; Friend v. Ward, 126 Wis. 291, 104 N. W. 997. (7) The court committed no error in excluding the evidence offered by appellant to show that Paul practiced a fraud on one Hawkins in securing part of the chattel mortgage property.

ELLISON, J.—This action was brought by plaintiff to recover from defendant twelve hundred and sixty-five dollars alleged to have been paid to it by the mistake of plaintiff induced by false representations of defendant. There was a change of venue from Lawrence to Jasper county where plaintiff had judgment. It appears that G. A. Paul borrowed $1,200 from O. J. Wilson, giving his note therefor. And that to secure payment of the note he executed, on same day, a chattel mortgage on a livery stock and a deed of trust on real estate. The realty was owned by his wife, Ella Paul, who joined in the execution of the deed of trust.

Afterwards the defendant bank bought the note of Wilson; the note, chattel mortgage and deed of trust being duly transferred to it.    Afterwards plaintiff bought of the Pauls a greater part of the realty conveyed in the deed of trust and, as a part of the consideration, he assumed and agreed to pay the note aforesaid; such assumption being written in the warranty deed which he received from the Pauls.

Plaintiff charges in his petition that afterwards defendant foreclosed the chattel mortgage by advertising and selling the personal property therein described for $1,400, more than enough to pay the note and interest and that defendant thereby received said sum, which was full payment of the note. He further charges in his petition that defendant came to him and represented that Paul had been declared and adjudged a bankrupt and that the proceeds of the sale under the chattel mortgage had been taken from defendant by the trustee in bankruptcy under an order of the referee. That defendant then demanded of him that he pay the note he had assumed, threatening that if he did not it would proceed to sell his property under the deed of trust. That believing defendant's statements he paid the note, and he therefore asks judgment against defendant for the amount paid in such circumstances. The evidence shows that defendant sold a part of the personal property under the terms of the chattel mortgage, for which it received the net sum of $690; and that it sold the balance of the property at private sale.

When plaintiff accepted his deed from the Pauls which contained the clause wherein he assumed the payment of the note, he became bound as a principal to pay it to defendant and G. A. Paul, the maker, became his surety.    [Nelson v. Brown, 140 Mo. 580; Pratt v. Conway, 148 Mo. 291; Wayman v. Jones, 58 Mo. App. 313; Fender v. Hazeltine, 106 Mo. App. 28; Wonderly v. Geissler, 118 Mo. App. 708.]    The note repre-

sented a part of the consideration which he was to pay for the land, and it became his obligation as fully as if he had signed it as a maker.    Escaping payment, he would have the land without paying the purchase price. Such assumption of the note gave defendant the right to maintain an action against him.

But, while all that is true, it is apparent, on the mere suggestion, that when defendant sought to hold him to such obligation there must then have been in existence, as a subsisting claim, the indebtedness said to have been assumed.    So, therefore if when defendant demanded payment of plaintiff, the note had been paid by the foreclosure of the chattel mortgage or a conversion of the property, defendant was left without any basis for its demand.    And to that effect was a ruling of the circuit court in passing on an objection to evidence during the trial.    The court remarked that "Of course, if the original debt was covered by chattel mortgage and also by mortgage on the real estate and by process of foreclosure (of the chattel mortgage) the debt was wiped out, there wouldn't be anything to assume."    It is no answer to this to say that plaintiff obligated himself to pay the note and that if he does not pay it he rids himself of the obligation to pay for the land.    For that would be no concern of defendant's; if the note has been paid to it, it has no excuse to meddle with the rights of others.    The party concerned would be Mrs. Paul.    Doubtless she could force plaintiff to pay to her direct what he had agreed to pay for her and did not. She could go to plaintiff and say to him "You agreed to pay a debt of mine as part payment for the land I sold to you.    That debt has been paid from another source and therefore you owe me the amount of such debt; otherwise you will be rid of paying for the land." In such manner would be avoided the inequitable state of affairs suggested by defendant of plaintiff getting the land without paying the purchase price.

It remains to inquire into the effect of defendant's foreclosing the chattel mortgage. Before the date of its foreclosure Paul had been adjudged a bankrupt, and defendant paid over to the trustee in bankruptcy (for the benefit of his creditors) the amount received at the foreclosure sale, viz., $690. This was not a payment on the note. It was not like the ordinary instance where the foreclosure of a chattel mortgage will discharge the debt in favor of the *mortgagor debtor* to the extent of the mortgage sale. This sum was in legal intendment retained by the debtor. It was not paid to the creditor. It was paid to the trustee in bankruptcy for the debtor, that is to say, for the debtor's creditors. So far as this plaintiff is concerned (who certainly owed the money, either to defendant or to Mrs. Paul) he can have no cause to complain of defendant in that respect. If he paid to defendant that amount he has done no more than he agreed to do. That amount was a subsisting indebtedness. Paul, the original debtor, could not say it had been paid on the note when, in point of actual fact, it had been paid to the trustee in bankruptcy for his benefit. If Paul could not claim it was a payment on the note, there is no reason why plaintiff should be permitted to do so.

But when it comes to the amount received by defendant from its private sales of other parts of the mortgaged property, we have to consider a different question. When a mortgagee appropriates the mortgaged property to his own use, or as might be said, when he converts it to his own use, it has sometimes been said to discharge the entire debt, but the better rule is that it is a discharge of the debt up to its value. [Hazard v. Robinson, 15 R. I. 226; Babcock v. Wells, 25 R. I. 23; Bank v. McKenny, 78 Me. 442; 4 Kent, sec. 182.] And that rule was in effect recognized and applied by our Supreme Court in Cohn v. Souders, 175 Mo. 455.

The value of the property thus appropriated by defendant has not been definitely fixed. Plaintiff insists that it was $600 and we are inclined to that amount since defendant, the wrongdoer in this respect, did not present a definite and detailed statement. Therefore we consider that of the indebtedness which plaintiff assumed to pay, six hundred dollars of it was discharged through another source as herein shown, and to that extent there was not a subsisting indebtedness in defendant's favor when it demanded the whole sum from plaintiff, and that amount was wrongfully received from plaintiff.

In thus concluding that the defendant had no right to demand of plaintiff the amount of the value of the mortgage property appropriated, we have not overlooked what we regard as an untenable defense of defendant's action in regard to such appropriation. That defense is this: That the mortgagor Paul got that part of the mortgaged property, thus appropriated, from one Hawkins, by false and fraudulent representations made to Hawkins, which had the effect of avoiding the sale by Hawkins to him and that no title passed, by reason of the fraud. It is perhaps enough to say of this that we know of no authority in defendant to become guardian for Hawkins and to administer upon his affairs. Whatever fraud may have been practiced upon Hawkins in the sale of the property by him to Paul, the sale was not void; it was only voidable at the election of Hawkins (Parker v. Marquis, 64 Mo. 38; Cahn v. Reid, 18 Mo. App. 115, 122, 126); and as long as he does not complain, it is no concern of defendant's.

The judgment will be reversed and the cause remanded, with directions to enter judgment for the plaintiff for six hundred dollars and interest. All concur.