# O'KEEFE, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

### St. Louis Court of Appeals, April 30, 1907.

1. **PRACTICE: Consistent Theories: Street Railways.** In an action against a street railway company for injuries to plaintiff, where it was shown that the plaintiff on account of some malady fell unconscious across the track and was run upon and injured by a street car, and where the defendant in examination of the witnesses and opening statement of its counsel tried the case upon the theory that it owned the car and that other defenses were relied upon, it could not be heard in the Court of Appeals to claim there was no proof offered that the defendant owned and operated the car which caused the injury.

2. ————: **Expert Testimony: Cumulative Evidence: Harmless Error.** In such action the propriety of a hypothetical question propounded to a witness as to the space in which a car could have been stopped at that point so as to avoid the injury, will not be considered where there was abundant other evidence to show the space in which it could be stopped and from which it might be inferred the motorman could have stopped the car and avoided the injury with proper care.

3. ————: **Depositions: Qualifying Deposing Witness: Harmless Error.** Where a deposition offered in evidence did not show the witness was a non-resident and there was not sufficient evidence to prove the fact, its admission was nevertheless harmless error when it tended merely to prove a fact established by other competent and uncontroverted evidence.

4. ————: **Personal Injury: Measure of Damages: "May."** In an action for damages on account of personal injuries, where the evidence showed that the injuries to plaintiff were permanent, an instruction authorizing the jury to allow damages for pain "which may be suffered by plaintiff in the future by reason of such injuries, if any," was not error. [Following Reynolds v. Transit Co., 189 Mo. 480.]

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

AFFIRMED.

*Boyle & Priest* and *Edward T. Miller* for appellant.

*Thompson & Campbell* for respondent.

(1)   The appellant should not be heard to say that the evidence does not disclose that it was the owner and operator of the car which injured plaintiff.   (a)   In a case like this inferential proof of ownership of the tracks, however slight, is all that is required.   Kerr v. Railroad, 113 Mo. App. 1; Geiser v. Railroad, 61 Mo. App. 462; Welsh v. Railroad, 102 Mo. 582; Johnson v. Railroad, 104 Mo. App. 588.   (b)   No such assignment of error was at any time called to the attention of the trial court, either during the hearing, or in the argument of the case before the jury, or in the motion for a new trial.   It is well-established law in this State that before applying to the appellate court, the party complaining should first ask the trial court to correct its own errors in the motion for a new trial, and must therein direct the attention of the trial court definitely and specifically to the error complained of.   R. S. 1899, sec. 864; Blakely v. Railroad, 79 Mo. 388; Cowan v. Railroad, 48 Mo. 556; Capelin v. Transit Co., 114 Mo. App. 266; Fields v. Baum, 35 Mo. App. 511; Putnam v. Railroad, 22 Mo. App. 589; Fox v. Young, 22 Mo. App. 386; Curtis v. Curtis, 54 Mo. 351; State v. Norman, 159 Mo. 532.

(2)   The court properly admitted the deposition of Mrs. Shoemaker.   The reviewing court will not disturb the trial court's finding, having some evidence in support thereof, that a witness whose deposition is offered in evidence was absent from the State.   R. S. 1899, secs. 2904, 4672; Brandon v. O'Vriant, 93 N. C. 99; Cunningham v. Cunningham, 121 N. C. 413; Kinney v. Berran, 6 Cush. 394; Guyon v. Lewis, 7 Wend. 26; 2 Am. Law Register (Old Series), 12; Weeks on Depositions, sec. 457; Livermore v. Eddy's Admr., 33 Mo. 547.   (3) Plaintiff's instruction numbered 3, on the measure of damages, was a good one, and was properly given by the

court. Reynolds v. Transit Co., 189 Mo. 408; Copelin v. Transit Co., 114 Mo. App. 256; Robertson v. Hammer Pkg. Co., 115 Mo. App. 520; Halley v. Power Co., 115 Mo. App. 652; Wells v. Electric Co., 108 Mo. App. 607.

NORTONI, J.—The suit is for personal injuries received by the plaintiff, a United States mail-carrier, while he lay in an unconscious condition upon the defendant's street car tracks. Plaintiff was not rendered unconscious by contact with the car, but was stricken with disease probably, while in the act of walking on the street, instantly became unconscious, and fell across the defendant's track, where he lay helpless, when he was run upon and seriously and permanently injured soon thereafter by defendant's car. The suit is predicated and prosecuted upon the theory that defendant failed to exercise ordinary care to discover his presence on the track and stop the car so as to avert the injury when, by the exercise of due care on its part, it had ample time and means to do so. The jury awarded plaintiff $3,500 damages and defendant appeals.

The material facts are as follows: Plaintiff was walking on Kingshighway at the point where it crosses St. Louis avenue, en route to the postoffice substation in order to commence his day's labor as a letter-carrier. Saint Louis avenue runs east and west, Kingshighway, north and south; both streets are public thoroughfares of the city of St. Louis. At the point where Kingshighway crosses St. Louis avenue, the defendant maintains a double-track street railway. The track on the north is occupied by its west-bound cars, and the track on the south, by its east-bound cars. As plaintiff approached the track, he stopped while one street car passed immediately in front of him, and looking down the track toward the center of the city, although it was not yet sunrise, he saw the defendant's car approaching some seven or eight hundred feet distant. Seeing

there was no immediate danger therefrom, he journeyed forward and was, without warning, suddenly stricken as he stepped on the north track, by some malady not disclosed, reeled and fell across said track in a wholly unconscious condition, and while in this condition and situation, was run upon and injured by the car he had seen, approaching from the east some seven or eight hundred feet away. When the car came in contact with his body, it was running at a rapid rate of speed. The fender attached to the foremost end of the car, dragged and rolled plaintiff along the track for a distance of about sixty-six feet before the car stopped. Painful, severe and permanent injuries were thereby inflicted upon him. He received fourteen cuts on his head, many of which were about his face and caused his eyes to close from swelling. Numerous bruises and marks were inflicted upon his body and one of his great toes as well as one of his small toes was fractured. His physician says: "The articular surface of the bone of the great toe, both before and back of the joint, united in healing until the bone is as one solid bone," so that at the time of the trial, it was, "just one bone without any joint," and would so continue, permanently, of course, from which he would suffer more or less pain for many years, especially during changes of weather. It was also shown that he had some internal injuries which caused him to spit more or less blood for several days. Defendant's counsel, in making the opening statement of the defense in the trial court, said as follows:

"Mr. Miller: I think the evidence for the defendant will show that this accident occurred at 6:25 on the 11th of February, and the sun didn't rise until 6:56, nearly half an hour after the accident. There had been some snow on the ground, and the tracks were 'slippery'. We will explain what is meant by that more fully by the evidence. The effect of it is that when the wheels of the car are locked they slide on the track, and you will

readily appreciate the effect of that. This was nearly half an hour before daylight, and this car was coming down that track, and had a little headlight on it—in the front end of it—and that wasn't a light for throwing the light a distance ahead of the car on the track, but was one of those lights by which a party can see a car approaching; that was the purpose of it. This motorman couldn't see the plaintiff lying on the track. There will be no question about him lying on the track, and I suppose there is no question about him falling there unconscious.

"The motorman, we claim, couldn't see him within a sufficient distance to stop his car. The plaintiff was dressed in a regular uniform of mail-carriers, and you know how near that would be the color of the earth; and the morning was foggy. And the policeman ran out there, and tried to stop the car, and the motorman saw the policeman and began to stop. His first thought was that the policeman wanted the car to stop so he could get on or for some purpose, and he then began trying to stop the car and he couldn't, and the car picked plaintiff up on the fender, and ran on for quite a distance. On our theory, it is just a question of the motorman not being able, after he saw this man, to stop the car in time.

"Fortunately, the fender worked, and the plaintiff was picked up and he was taken away. I believe the evidence will further show that there was quite a pool of blood at the place the plaintiff had originally fallen, which may in some way account for him falling there— blood that was not the result of the wound inflicted by the car. Those are the facts in connection with this unfortunate accident. It seems to be a pure accident to me, and from the testimony those are the facts I expect to be developed by the witnesses here, and if they are such I will expect a verdict at your hands."

The evidence on behalf of the plaintiff tended to

show the fact above stated and further, the plaintiff was clothed in his mail-carrier's uniform of light gray, quite the color of the earth in the center of the track at that point.

The injury was received on the 11th day of February, 1905, after daylight and before sunrise, about 6:30 o'clock in the morning. It was sufficiently light to enable a policeman whose attention was directed in that direction by the sounding of a gong, upon looking, to see the plaintiff's form upon the track. His first impression was that it was a mail bag, inasmuch as he noticed a government mail wagon near and was expecting the mail car which, it seems, passed on defendant's road at about that hour. The officer, after his first impression, recognized the form on the track as that of a man, however, and ran forward toward the approaching car, waving his arms and shouting to the motorman, "Stop, stop!" etc.; that the car was, when he first recognized the form as that of a man, one hundred and fifty feet east of the plaintiff's prostrate form, and approaching at a rate of about fifteen or sixteen miles an hour; that it did not stop but continued to approach and ran into the plaintiff, carrying or dragging him with its fender about sixty-six feet across to the west side of Kingshighway, where it came to a stop. He and others removed plaintiff in an injured and unconscious condition, conveyed him to and placed him in the care of a physician. Another witness who resided in the neighborhood, said it had snowed a day or two before and there was still some snow around there; that the tracks were frosty, bright, and more or less slick as they are on cold mornings; that the track on which the car was running was on a slight incline but level at the point of collision; on the question of how far one might see and distinguish the form of a man, said that he came out of his gate immediately after the injury, three hundred and fifty feet west of the point where the parties were assembled, removing

plaintiff from the car fender, and as he approached toward them, when within two hundred feet from the parties, he saw and recognized the police officer as an officer, in the crowd, from his uniform, buttons and star. Besides proving the painful and permanent character of his injuries by the attending physician, plaintiff also proved the amount of his doctor and medical bills, loss of time, earnings, and also proved by an ex-mortorman (Doyle) that a car running at sixteen miles an hour could have been stopped in from eighty to ninety feet in safety to the car and those being conveyed therein.

The defendant introduced no proof whatever. It requested the court to peremptorily direct a verdict in its behalf, which was refused over its exceptions, and this refusal is the first point advanced by it in this court. Other relevant facts will appear in the opinion.

1. There was no direct evidence introduced tending to prove defendant either owned or operated the railroad or car, and for this reason defendant now argues its demurrer to the evidence should have been sustained. Indeed, were it not that the entire conduct of the case by defendant's learned counsel in the court below was such as to convey the impression to the court, jury and opposing counsel, that this were a conceded fact, we would be compelled to reverse the judgment because of the absence of substantial proof on this matter. It is said, however, that where the case proceeds in the trial court as though no issue is made and no contest is had with respect to the matter of ownership or operation, as in this case, full proof of this apparently uncontroverted or conceded fact, is not required, and slight evidence tending to support the inference that defendant owns or operates the road will be sufficient when it is not combated and the entire case is conducted by defendant upon a theory indicating its responsibility, except for other causes which are relied upon solely for acquittal of the negligent act, as where no intimation is made that

the defendant resists the claim asserted on the ground it was not responsible as the owner or operator. [Kerr v. Railroad, 113 Mo. App. 1, 87 S. W. 503; Geiser v. Railway, 61 Mo. App. 459; Johnson v. Railway, 104 Mo. App. 588, 78 S. W. 275; Walsh v. Railway, 102 Mo. 582, 14 S. W. 873, 15 S. W. 757.] Now it appears that one witness at least spoke of the road and car as those of defendant, and no one so much as intimated to the contrary, as appears by the opening statement of defendant's counsel above set out; in fact, the only defense interposed to the action was that defendant denied liability solely for the reason it was not possible for the motorman to avert the injury after he either saw, or by the exercise of ordinary care, could have seen, plaintiff in a position of peril. Counsel said in part: "The motorman, we claim, could not see him within a sufficient distance to stop the car. . . . Under our theory, it was just a question of the motorman not being able, after he saw this man, to stop the car in time. . . . These are the facts I expect to be developed by the witnesses here, and if they are such, I will expect a verdict at your hands." From this it appears, in the language of counsel, the only question he was trying, and on which he was resisting liability on the part of the defendant, was: *"just a question of the motorman not being able, after he saw this man, to stop the car in time."* Now it is a well-settled principle in appellate practice that a party is held on appeal to the position which he assumes below and is accordingly estopped to alleged error in any action of the trial court which he has recognized as valid by his voluntary act. [2 Ency. Pl. and Pr., 516; Hudson v. Railroad, 101 Mo. 13, 14 S. W. 15.] And it is likewise the law that the trial court is justified in assuming that a fact, tacitly conceded by counsel in his opening statement, and his entire conduct of the case indicates there is no contest thereabout, will be conceded throughout the trial for the purpose of the case,

nothing to the contrary appearing. [Pratt v. Conway, 148 Mo. 291-299, 49 S. W. 1028; Oscanyan v. Arms Co., 103 U. S. 261.] And under such circumstances, a party will not be permitted on appeal to avail himself of a general demurrer interposed at the trial to raise questions which were not theretofore controverted in, or pointed out to the trial court, otherwise the court would be frequently adjudged in error on matters not brought to its attention and on which it had given no judgment of the law. [Chinn v. Naylor, 182 Mo. 583; Reynold's Appeal, 70 Mo. App. 576.] We are persuaded, in view of the theory pursued by defendant's counsel in the circuit court, as indicated by his statement and subsequent conduct of the case, seeking to escape liability solely on the grounds indicated, that it is now estopped to question the sufficiency of the proof on this fact which was tacitly conceded in the trial. [Bigelow on Estoppel (5 Ed.), 673-717.]

Doyle, an ex-motorman, was introduced by plaintiff and after qualifying as an expert, gave evidence tending to prove the car could have been stopped within eighty or ninety feet, when running at sixteen miles per hour. The sufficiency of the hypothetical question propounded to this witness is challenged. It will be unnecessary to consider this assignment, however, in view of the fact that there was an abundance of evidence which, perforce of the law on demurrer, is admitted to be true, to the effect that the light was sufficient for the motorman to distinguish the object on the track to be a man from one hundred to two hundred feet, when the car was approaching at the rate of from fifteen to sixteen miles per hour until its actual collision with the plaintiff. The speed was not checked until the point of collision was reached, after which it was stopped in a distance of sixty-six feet by the motorman. The police officer testified, after the first impression, he recognized the form on the track as that of a man. The car was

then one hundred and fifty feet from the plaintiff, and that he ran toward the same crying: "Stop, stop!" notwithstanding which, the car continued to approach to the point of collision at the same rate of speed, and was stopped within sixty-six feet thereafter. This was pointed proof tending to show defendant's motorman was inattentive to the imposed duty of exercising ordinary care to discover plaintiff's position of peril, and check the car after such peril could have been discovered by exercise of due care on his part. From the evidence, the car was stopped within sixty-six feet after the collision, running at the same speed that it was one hundred and fifty feet away, the jury was justified in the inference it could have been stopped in the exercise of due care, so as to have averted the injury. Witness Dunkman gave positive testimony that he recognized the police officer as an officer by his uniform, buttons and star, at a distance of two hundred feet while the parties were removing the plaintiff from the car fender. From this evidence and the last above referred to, it is obvious there was substantial evidence before the jury on the question of defendant's negligence, even though that of the witness Doyle be entirely excluded. In such circumstances, no expert evidence was required to establish the fact that defendant's motorman could, by the exercise of ordinary care, have seen the plaintiff in his perilous position and stopped the car in time to have averted the injury. [Wise v. Transit Co., 198 Mo. 546, 97 S. W. 898; Beier v. Transit Co., 197 Mo. 215, 94 S. W. 896.]

2. The deposition of Mrs. Shoemaker, formerly a resident of St. Louis but now said to reside in Philadelphia, had been taken in the case. She did not state therein that she would be absent from, or a non-resident of the State at the time of the trial, nor did the notary certify such fact in his certificate as permitted by the statute, and therefore the plaintiff undertook the burden

of showing she was then a non-resident of this State by
other evidence which, of course, would be competent if
the evidence were sufficient. Defendant's counsel ob-
jected to the sufficiency of the proof in this behalf, how-
ever, insisting that plaintiff had failed to show the es-
sential fact of non-residence under the statute, by com-
petent proof. [R. S. 1899, sec. 2904.] The court, never-
theless, permitted the plaintiff to read the deposition in
evidence over defendant's objection and exception. This
action is therefore insisted upon as reversible error. It
is unnecessary to set out the evidence introduced in
support of the proposition that witness was a non-resi-
dent of the State. We have examined it carefully, and
are of the opinion there is no doubt the court erred in
admitting the deposition, under the authority of Gaul
v. Wanger, 19 Mo. 541, 542, and Wetherell v. Patterson,
31 Mo. 458. These cases seem to be in point. The ques-
tion therefore is, its admission in evidence being error,
was it reversible error; that is, was it such error as
"materially affected the merits of the action?" If not,
then it becomes the duty of this court, under the positive
command of the statute (R. S. 1899, sec. 865), to pass
the matter as immaterial and decline to disturb the judg-
ment on account thereof. Upon an examination of the
contents of the deposition, we find it related wholly and
solely to the question whether or not it was sufficiently
light at the time plaintiff was injured to enable the mo-
torman to have seen the plaintiff on the track in time
to have stopped the car. Witness gave evidence that she
resided about three hundred and forty feet distant from
the point where the car finally stopped and plaintiff was
removed from the fender. She was in her kitchen pre-
paring breakfast, did not see the collision, but saw sev-
eral men assembled, removing him from the fender of
the car, and among them, she was able to recognize a
police officer by his uniform, and likewise recognized the
car men by their uniforms; that it was a bright clear

morning, although before sunrise, and not foggy. This is the entire substance of the deposition. Now, it is obvious this testimony was cumulative, only, and tended to prove the same facts as that of the police officer and witness Dunkman on this, really the only issue in the case, the evidence of both of whom stands not only uncontroverted in the record before us, but is admitted to be true by operation of the defendant's demurrer to the plaintiff's case. It is a well-established rule of appellate practice that the erroneous admission of a deposition or evidence, which tends only in a cumulative manner to prove a fact otherwise established by competent evidence and uncontroverted, operates as harmless error only which does not materially effect the merit of the action and therefore falls within both the letter and spirit of our statute cited supra. The judgment should therefore not be reversed on that score. [Reno v. Kingsbury, 39 Mo. App. 240, 244, 245; Tuggle v. Railway, 62 Mo. 425; Julian v. Calkins, 85 Mo. 202; Wilkinson v. Met. Ins. Co., 54 Mo. App. 661; O'Neill v. Kansas City, 178 Mo. 91, 102, 77 S. W. 64; Hogan v. Citizen's Ry. Co., 150 Mo. 36, 51 S. W. 473; Young v. Hudson, 99 Mo. 102, 12 S. W. 632; Gould v. Trowbridge, 32 Mo. 291; Bailey v. Kansas City, 189 Mo. 503, 511, 87 S. W. 1182.]

3. On the measure of damages, the court instructed as follows:

"If the jury find for the plaintiff, they will, in assessing his damages, award him such sum of money as shall fully compensate him for the mental and bodily pain and suffering endured by him consequent upon the injury, if any; for the loss of earnings occasioned thereby, if any; for such expenses as the plaintiff may have necessarily and reasonably incurred for physician's services, if any; and for the mental and bodily pain which may be suffered by plaintiff in the future by reason of such injuries, if any; and for any permanent injuries suffered

by plaintiff; if you find from the evidence that he has suffered any such permanent injury."

It will be observed this instruction authorized the jury to allow damages "for the mental and bodily pain which *may* be suffered by plaintiff in the future by reason of such injuries, if any, and for any permanent injuries suffered by plaintiff, if you find from the evidence that he suffered such permanent injury." Now it is the accepted rule for the admeasurement of present damages for future consequences of an injury, that such damages shall be reasonably certain to result from the injury and the doctrine is universally recognized by the courts and text-writers, as will appeal by reference to the following authorities. [Reynolds v. Transit Co., 189 Mo. 408, 88 S. W. 50; decided by our Supreme Court, and the following cases by this court: Schwend v. Transit Co., 105 Mo. App. 534, 80 S. W. 40; Walker v. Railway, 106 Mo. App. 321, 80 S. W. 282; McKinstry v. Transit Co., 108 Mo. App. 12, 82 S. W. 1108; Holden v. Railway, 108 Mo. App. 665, 84 S. W. 133; Haas v. Railway, 111 Mo. App. 706, 90 S. W. 1155; and the cases of Albin v. Railway, 103 Mo. App. 308, 77 S. W. 153; and Ballard v. Kansas City, 110 Mo. App. 391, 86 S. W. 479; by the Kansas City Court of Appeals. See also 1 Sutherland on Damages (3 Ed.), sec. 123; Watson on Damages and Personal Injuries, sec. 302; Voorheis, Measure of Damages, sec. 46; Joyce on Damages, sec. 244.] In view of this established principle, learned counsel challenge the employment of the word "may" in the instruction last quoted, with respect to present recovery for future pain, and future impairment, by reason of the permanent injury suffered. It is argued the word "may" in this connection permits the jury to disregard the principle that such future pain and permanent impairment must be reasonably certain to follow as a result of the injury and opens to them a field of pos-

124 App.—40

sibility or conjecture, as many results may be entailed which in fact are not reasonably certain to follow the injury, whereas it is only such consequences as are reasonably probable or reasonably certain to follow, for which he is entitled to present recompense. Now this argument is certainly sound in principle and in numerous cases, has been sustained and instructions employing the word "may" in this connection have frequently been condemned, as will appear by reference to the cases of Schwend v. Transit Co., 105 Mo. App. 534; McKinstry v. Transit Co., 108 Mo. App. 12; Walker v. Railway, 106 Mo. App. 321; Haas v. Railway, 111 Mo. App. 706, decided by this court, and in Albin v. Railway, 103 Mo. App. 308, and Ballard v. Kansas City, 110 Mo. App. 391, by the Kansas City Court of Appeals. Notwithstanding the well-recognized and established principles referred to and the several adjudications condemning instructions of the nature here involved, as reversable error, our Supreme Court in the recent case of Reynolds v. Transit Co., 189 Mo. 408, 88 S. W. 50, announced the doctrine that even though the word "may" is mis-chosen in this connection, and generally speaking, permits a jury to ramble in the domain of conjecture or possibility, the case should not be reversed because of the employment of such word in the instruction, when by reference to the facts of the case, a permanent injury is disclosed and the context in which the word is used in the instruction, imply that the jury is thereby directed to find such future pain or impairment must be reasonably probable or reasonably certain to result from the injury. Under the doctrine of that case, this court has recently adjudged in Caplin v. Transit Company, 114 Mo. App. 256, 89 S. W. 338, that when the meaning of the word "may" in such instruction is qualified by the phrases, "if any" as therein pointed out, it will be considered as meaning "must" or "shall" and while the instruction may not be approved, the case will not be reversed therefor. It will

be observed the instruction quoted above in this case contains the same qualifying words "if any," almost if not quite, in the same relation as those employed in the case last cited, and upon reading it all together (in the light of plaintiff's permanent injury to his great toe, which it is said will continue to render him pain during the time of change of weather and also operate to inconvenience him in walking) it appears the employment of the word "may" in the context in which it is used, may quite reasonably be said to have required the jury to allow him only such present recompense for future pain and impairment, as appeared to be reasonably probable or reasonably certain entailments of the injury. The Kansas City Court of Appeals, in two recent cases, has given expression to like views, as will appear by reference to Halley v. St. Joseph Light Co., 115 Mo. App. 652, 91 S. W. 163; Robertson v. Hammond Packing Co., 115 Mo. App. 521, 91 S. W. 161. The constitution expressly commands this court to follow the last previous ruling of the Supreme Court on all questions of law and equity. It is our duty to obey this mandate. Under the authorities last mentioned, the assignment against this instruction should be overruled.

Finding no reversible error in the record, the judgment is affirmed. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.