FRED SMITH, Respondent, v. ADOLPH C. HEIBEL,
Appellant.

St. Louis Court of Appeals.   Argued and Submitted April 5, 1911.
Opinion Filed May 2, 1911.

1. NEGLIGENCE: Automobile Colliding with Street Car: Injury
to Person Riding on "Bumper" of Car: Contributory Negli-
gence.  In an action for personal injuries sustained by reason
of an automobile colliding with the rear end of a street car and
striking plaintiff, who was riding on the "bumper" of the car,
*held*, that, as to the driver of the automobile, plaintiff was not
guilty of contributory negligence, as the driver had no right,
as against plaintiff, to claim that no one should be allowed to
ride on the "bumper," and besides he had no right to
negligently run into the street car, whether anyone was on the
"bumper" or not.

157 App—12

2. ———: Last Clear Chance Doctrine:. Not Applicable, When. The last clear chance doctrine concedes prior negligence on the part of plaintiff, and is not applicable where injury results solely from defendant's negligence.

3. ———: Humanitarian Doctrine: Nature. The humanitarian doctrine proceeds in accordance with the precepts of humanity, and requires every person to protect every other person seen to be in, or about to become in, a position of peril, if he can do so by the exercise of ordinary care, while exercising, as well, ordinary care for himself and those in his charge, whether such person became in peril through his own negligence or otherwise.

4. ———: ———: Last Clear Chance Doctrine: Difference. The humanitarian doctrine includes that of last clear chance, but the latter does not include the humanitarian doctrine in its entirety.

5. ———: Last Clear Chance Doctrine: Nature: Proximate Cause. The last clear chance doctrine concedes the negligence of the plaintiff in the first instance, but nevertheless permits a recovery on the distinct ground that defendant had the last clear chance to avert the injury, and failed to do so; the prior negligence of plaintiff, under these circumstances, being remote in the chain of causation, while that of defendant was the proximate cause of the injury.

6. ———: Automobile Colliding with Street Car: Injury to Person Riding on "Bumper:" Pleading: Humanitarian Doctrine. In an action for personal injuries sustained by reason of an automobile colliding with the rear end of a street car and striking plaintiff, who was riding on the "bumper" of the car, the petition alleged that "plaintiff further states that the carelessness and negligence of the defendant in so managing and operating said automobile as to cause and suffer the same to collide with plaintiff, as aforesaid, directly caused the injuries sustained by the plaintiff, as above set out, and that the defendant by the exercise of ordinary care saw, or could have seen, plaintiff in a position of peril, and that after plaintiff's position of peril became known, or could by the exercise of ordinary care have become known, to defendant, the defendant could, by the exercise of ordinary care in operating and driving said automobile, have avoided striking and injuring plaintiff, but carelessly and negligently failed to do so." *Held*, that the petition did not, by any. intendment, confess that plaintiff was negligent, but, declaring upon the humanitarian rule, as it did, confessed no more than that he was in peril.

7. ———: ———: ———: **Lookout by Automobile Driver Required.** It is the duty of an automobile driver, who is following a street car, to look ahead, and, doing that, he must see a person who is riding on the "bumper" of the car.

8. ———: **Humanitarian Doctrine: Does Not Confess Contributory Negligence.** By counting on the humanitarian doctrine, plaintiff does not admit he was guilty of contributory negligence.

9. ———: **Automobile Colliding with Street Car: Injury to Person Riding on "Bumper:" Instructions.** In an action for personal injuries sustained by reason of an automobie colliding with the rear end of a street car and striking plaintiff, who was riding on the "bumper" of the car, *held*, that the rulings of the court in giving and refusing instructions, which are summarized in the opinion, were correct.

10. ———: ———: ———: **Pleading: Amending Petition: Striking Out Assignment of Negligence.** In an action for personal injuries sustained by reason of an automobile colliding with the rear end of a street car and striking plaintiff, who was riding on the "bumper" of the car, it was not error to permit plaintiff to strike out of his petition a charge of negligence which invoked the humanitarian doctrine, leaving stand an averment of actionable negligence on the part of defendant, as the elimination of the matter struck out did not affect the other assignment of negligence and was not prejudicial to defendant.

11. ———: **Pleading: Right to Abandon Assignment of Negligence.** Where plaintiff pleads several assignments of negligence, he is not bound to submit all of them to the jury, but may abandon any one or more of them.

12. **DAMAGES: Personal Injuries: Excessive Verdict.** In an action for personal injuries, where plaintiff's leg was fractured just above the ankle, and experts testified that while, in such cases, "the bone itself generally heals permanently, the soft parts near the fracture are likely to prove a more lasting injury," and it was shown that plaintiff's average wages had been $3.50 per day and that he lost about five months' time from his work, and had incurred a doctor's bill of $75, *held*, that a verdict for $1200 was not excessive.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

Smith v. Heibel.

*Adolph E. Methudy* and *E. C. Kehr* for appellant.

(1) Plaintiff's peril was created solely by his own negligence. His petition is based on the humanitarian, or last chance doctrine, and avers and concedes his own negligence. Metz v. Railroad, 217 Mo. 275; Krehmeyer v. Transit Co., 220 Mo. 639; Murphy v. Railroad, 228 Mo. 56; Schmidt v. Railroad, 140 Mo. App. 182; Dey v. Railroad Co., 140 Mo. App. 461; Parrish v. Railroad, 140 Mo. App. 700; Hough v. St. Louis Car Co., 146 Mo. App. 58; Felver v. Railroad, 216 Mo. 195. (2) After the evidence was all in, the court against the defendant's objection and protest, allowed the plaintiff to strike out that portion of his petition in which he invoked the humanitarian doctrine. The court erred in allowing the plaintiff to thus shift his position at that stage of the case. (3) The court erred in refusing defendant's demurrer to the evidence at the close of the whole case. Having allowed the plaintiff to strike out the allegations which were intended to excuse his own negligence, the petition then presented a case in which the facts constituting the plaintiff's negligence were admitted, and hence stated a case of mutual or concurrent negligence which barred plaintiff's recovery. (4) The court erred in the instructions, which it gave at the instance of the plaintiff and on its own motion. The answer clearly and pointedly charged contributory negligence on the part of the plaintiff, but plaintiff's instruction purporting to cover the whole case on his right to recover ignored the defense altogether. The same error occurs in the instruction given by the court on its own motion. This constitutes reversible error. Percell v. Railroad, 126 Mo. App. 53; Hohstadt v. Daggs, 50 Mo. App. 240; Bolles v. Railroad, 134 Mo. App. 696; Clark v. Hammerly, 27 Mo. 70; Fitzgerald v. Hayward, 50 Mo. 615; Mansur v. Botts, 80 Mo. 651. (5) The verdict is excessive. The plaintiff suffered no permanent injury, and there is no element of wantonness or malice in the case.

*Wilfley, McIntire & Nardin,* for respondent, filed argument.

REYNOLDS, P. J.—At about 11:30 o'clock of the morning of October 7, 1909, defendant, residing near the intersection of Twentieth and Olive streets, in the city of St. Louis, and desiring to come down town, attempted to board one of the east-bound cars operated at that time along Olive street by the United Railways Company, the car coming from the west and running to the east. It was one of the days in what was known as "Centenial Week," in St. Louis, and a public parade attracting great crowds was being held. The car which plaintiff attempted to board was filled to overflow, so that plaintiff was not able to obtain even standing room inside of it or on the platforms but managed to plant himself on the "bumper," as it is called, an iron or steel coupling attachment fastened under the bottom of the car and extending about a foot behind it to the rear of the car. He stood on this bumper and held on to the back rail of the back platform of the car, having paid his fare to the conductor. There were many cars moving along the track at the time, and the car upon which plaintiff was riding was moving slowly from Twentieth street down toward Fourth street. When that car reached Twelfth street the parade referred to was crossing Olive along Twelfth, and a great crowd of people were standing along the street watching it. The defendant, at the same time, was driving in his automobile along Olive street, following this car upon which plaintiff was standing. How long he had been following the car plaintiff did not know, but the first time he noticed defendant and his automobile was about Fourteenth street. The automobile followed the car from there down, stopping when the car stopped, until, as plaintiff testifies, the car got to Eleventh street. The car stopped on the east crossing but the automobile which defendant was driving failed to stop and ran into the car. There was nothing in the

shape of an obstruction between the automobile and the street car. When the car slowed down to stop the automobile did not stop until it ran into it. When the automobile ran into the car, the fore part of the automobile caught plaintiff on the leg just about at and above his ankle, pinning the leg between the bar on the front end of the automobile and the rear frame work of the car, shoving plaintiff's foot under the body of the car, the automobile bar going directly over the bumper on which plaintiff was standing and holding him by his ankle against the car; as he says, "pushed the ankle of his left foot under the car;" with the result that the bone was broken just above the ankle and at the top of his shoe. He was held there for a second or so and when the automobile backed away he hobbled to the curbstone, then went to the city dispensary where his leg was done up and he was taken home. There he was put under the care of a surgeon and remained under his treatment for some six weeks. His leg was in a plaster-of-paris cast about six weeks. He had been earning about $5 a day at the time the injury occurred; his average earnings per day were about $3.50; he was not able to work and did no work from the time of the injury until the first or second of March following, that is, for about five months. When plaintiff first noticed that defendant made any effort to stop the automobile, he thought it was 10 or 12 feet away from the rear of the car. It had followed directly behind the car, as before stated, from Fourteenth street down to the place of the accident and plaintiff had noticed the automobile every time it made a stop; had watched when defendant made a stop to see that he didn't run up against the car; the automobile came up very close each time, but until the occurrence of the accident, had not touched him or the car.

A witness for plaintiff who was on the end of the car upon which plaintiff was riding, testified that he was facing to the west; that there was a crowd on the car and he had noticed defendant coming down in his automo-

bile; that he got pretty close to the car before the street car got to Eleventh street; that it had got a little ahead of the automobile and when the car reached Eleventh street it stopped, but defendant couldn't stop his automobile. This witness saw plaintiff, whom he did not know at the time, hanging on behind. He saw him limp away and saw that the lamp on the automobile had broken and that the gentleman running it had gotten out and looked at it; saw defendant and plaintiff at the moment the collision occurred. Defendant reached down and grabbed hold of one of the brakes, he supposed, and it looked to the witness as if he missed it. "The street car was getting ready to stop," said this witness, "and the chances were he couldn't stop it (the automobile) in time;" didn't pay any attention to plaintiff and could not say whether he made any effort to get out of the way.

The surgeon who had attended plaintiff testified that when he took charge of the case he found a fracture of the outer bone—of the smaller bone—a little above the ankle joint. The injury had been dressed and when he was called into the case he removed the dressing and reset the bone to his own satisfaction and put on splints. After that he had called on him every second or third day for six weeks and after that plaintiff had called at his office. "The bone itself generally heals permanently but the soft parts near the fracture are likely to prove of more lasting injury." His charge, which he thought was reasonable, for taking care of this case, was seventy-five dollars.

This was substantially the version of the case as given on behalf of plaintiff.

Defendant's version is that he took his automobile from Nineteenth and Locust streets down Olive street, going to Tenth street, and was following the street car. The street was crowded and the police made him follow the car, going at a speed of two or three miles an hour. Between Tenth and Eleventh streets the car made a sudden stop. Defendant tried to stop his machine

the best he could but bumped into the car. The street was "awfully crowded," as he said, and he further said that his machine did not hit plaintiff nor did he see anyone else that was hurt; is familiar with the use of an automobile; knows how to start or stop one; made all the efforts he could to stop the machine, but the street car stopped so suddenly that he had no chance to stop. Beyond the evidence of another witness for defendant, testifying as to plaintiff coming to defendant's office and saying that he did not know who hit him, and on being asked by defendant if he was the man, plaintiff said he was not, there was no other evidence given on behalf of defendant except that of the physician who had been in charge of the city dispensary, who testified that plaintiff had been brought in there about 11 o'clock in the morning of the day of the accident; that he examined his limb, found he had a fracture of the fibula of the left limb just above the ankle; set it temporarily; put on the dressing and had him sent home in an ambulance. In his opinion, a man would be disabled from an injury of that kind for from six to eight weeks but that there is no permanent injury.

These are the facts in the case, as shown by the abstract of the testimony.

The petition upon which the case was tried set up the facts as above brought out by plaintiff's testimony, averring that by reason of the car being so densely crowded, plaintiff was unable to enter it but took a position on the "bumper," and that while in that position, and as the car moved eastward on Olive street, defendant drove his automobile up behind the car, and as the latter approached the intersection of Olive and Eleventh streets it slowed down for the purpose of coming to a standstill at the east side of Eleventh street, and that as the car so slowed down and was about to come to a full stop on the east side of Eleventh street, defendant "so carelessly and negligently operated and drove said automobile as to cause and suffer it to come in contact and collide with

Smith v. Heibel.

plaintiff located on the bumper of said car as aforesaid, and injuring him." Describing the injuries and that they are permanent and that he had lost and would continue to lose the earnings of his labor, the petition continues: "Plaintiff further states that the carelessness and negligence of the defendant in so managing and operating said automobile as to cause and suffer the same to collide with plaintiff, as aforesaid, directly caused the injuries sustained by the plaintiff, as above set out, *and that the defendant by the exercise of ordinary care saw, or could have seen, plaintiff in a position of peril, and that after plaintiff's position of peril became known, or could by the exercise of ordinary care have become known to defendant, the defendant could, by the exercise of ordinary care in operating and driving said automobile, have avoided striking and injuring plaintiff, but carelessly and negligently failed to do so.*" Judgment is prayed for $4000 and costs.

The answer, after a general denial, pleads this: "Defendant further states that the plaintiff was guilty of gross negligence in the occurrence recited in said petition, in that he undertook to ride upon a car so densely crowded with passengers that he was unable to enter the same and in that he took a position on the 'bumper,' which is not designed or constructed to carry passengers and is unfit for that service, and which necessarily exposed him to imminent danger and that whatever injuries he may have received, if any, were occasioned by his own gross negligence, which directly contributed to the injuries complained of."

A reply in general denial of the new matter was filed by plaintiff.

The trial was before the court and a jury and on plaintiff being called as a witness and sworn, defendant objected to the introduction of any testimony in the case on three grounds. This was overruled, defendant excepting. As no assignment of error on this ruling is made by counsel before us, it is unnecessary to notice it.

At the conclusion of the evidence, plaintiff asked leave to strike out from the petition the words which we have put in italics. This was objected to by defendant on the ground, also here urged, that by striking out these words, the cause of action upon which the case has been tried and the evidence adduced had been changed, and striking out the words substituted a new and different cause of action for the one set out in the petition and in respect to which the evidence was introduced. This was overruled, the amendment made, defendant excepting.

At the instance of plaintiff the court instructed the jury, in substance, that if they found from the evidence that plaintiff, on the day named, was riding on the rear end of the street car on what is known as the bumper and had paid his fare as a passenger on that car, and that the car on which he was a passenger was proceeding along Olive street and approached the intersection of Olive and Eleventh streets at about the hour and day named, and that defendant was operating an automobile in the rear of the car "and following said car, and in close proximity thereto; and that as the said car on which plaintiff was a passenger, appproached the intersection of Olive street and Eleventh street as aforesaid; the said car slowed down and was about to come to a full stop at the regular place for stopping cars of the United Railways Company for the discharge and acceptance of passengers, and that at said time and place defendant carelessly and negligently drove and operated his said automobile, and carelessly and negligently drove the said automobile against plaintiff, causing the said automobile to come in contact with and collide with plaintiff while he was a passenger on the car . . . as aforesaid, thereby injuring plaintiff; then your verdict will be for the plaintiff."

The second instruction was as to the measure of damages. The third correctly defined the term "carelessly and negligently," as used in the instructions. The

fifth correctly defined "ordinary care," as mentioned in the instructions, as depending "on the facts of each particular case. It is such care as a person of ordinary prudence would exercise (according to the usual and general experience of mankind) in the same situation and circumstances as those of the person or persons in this case with reference to whom the term, 'ordinary care,' is used in these instructions. The omission of such care is negligence in the sense in which that word is used in these instructions.".

Of its own motion, after instructing the jury as to the number necessary to concur in a verdict, the court, by instruction No. 4, instructed that "unless the jury find from the evidence that an automobile operated or driven by the defendant, struck and injured the plaintiff, the verdict must be for the defendant." (This is word for word instruction No. 2 asked by defendant.) The instruction then proceeded. "The jury are further instructed that plaintiff cannot recover unless the jury further find that defendant's automobile struck the plaintiff because the defendant failed to exercise ordinary care at the time in operating or driving the automobile under the conditions existing at the time and place of the accident complained of." Exceptions to these were duly saved by defendant, who requested three instructions. 1st. That on the pleadings and all the evidence plaintiff could not recover. 2d (As above in No. 4 noted.) "3. If you find and believe from the evidence that an automobile operated or driven by the defendant, at the time and place stated in the petition, struck the plaintiff, then you are further instructed that the petition in this case states and admits that the plaintiff had placed himself in a position of peril by riding on the 'bumper' on the outside of the car. He has thereby admitted his own negligence and cannot recover in this case, unless the jury find and believe from the evidence:

1. That the defendant saw, or by the exercise of ordinary diligence, would have seen the plaintiff in his position of peril in time to avoid colliding with or striking him, if he, the defendant, had exercised ordinary care on his part; and—

2. That the defendant's automobile struck the plaintiff because the defendant failed to exercise ordinary care in operating or driving the automobile under the conditions existing at the time and place of the accident."

The court refused each of these, defendant excepting.

The jury returned a verdict for plaintiff in the sum of $1200. The defendant, filing a motion for new trial which was overruled and exception saved, has duly perfected an appeal to this court.

Learned counsel for appellant urge five grounds on which they claim reversal: 1st. That plaintiff's peril was created solely by his own negligence; his petition is based on the last chance doctrine and concedes his own negligence. 2d. After all the evidence was in, it was error in the court to allow plaintiff to strike out that portion of the petition which invoked that doctrine, thus allowing plaintiff, at that stage of the case, to shift his position. 3d. Error in overruling the demurrer at the close of the whole case, as when the allegations which were intended to excuse plaintiff's negligence were eliminated, the petition presented a case in which the facts constituting plaintiff's negligence were admitted and hence stated a case of mutual or concurrent negligence which barred plaintiff's recovery. 4th. The instructions given were erroneous in that while the answer clearly and positively charged contributory negligence on the part of plaintiff, and while the instructions given for plaintiff purported to cover the whole case on plaintiff's right to recover, those instructions totally ignored the defense of contributory negligence. 5th. The verdict is

excessive; no proof of permanent injury or element of wantonness or malice in the case.

The first proposition is that plaintiff's peril was created solely by his own negligence. To concede this is to concede that, as a matter of law, it was negligence on the part of plaintiff to ride on the bumper. We do not concede that. To the contrary, on the facts in this case, and as between these parties, that was not a fact to be submitted to the jury as one showing negligence on the part of plaintiff—and it is the only fact claimed to constitute negligence in the case on the part of plaintiff. In so far as concerns this defendant he cannot claim that this act of standing on the bumper was negligence. Defendant had no right, as against the plaintiff, to claim that no one should be allowed to ride on the bumper. He had no right, negligently and carelessly, to run into the street car, whether any one was on the bumper or not. So that it was no concern of his that plaintiff was riding in a place of peril. It might have been held negligence on the part of plaintiff, as between plaintiff and the street car company, but even then, as he was there by permission of the street car company, was its passenger, paying fare for his transportation, it would be a question whether the car company could have absolved itself from liability, if by the movement of the car or some act of itself or its servants, plaintiff had been injured.

In Huelsenkamp v. Citizens' Railway Co., 37 Mo. 537, the husband of the plaintiff was hanging on to the outer edge of the car, standing on the step of a platform of the car; as dangerous a place as this bumper, but our Supreme Court held, Judge WAGNER delivering the opinion, that the defendant there was liable to respond for the killing of the passenger, when that killing was the result of the carelessness and negligence of that defendant's employes. True, in that case, the humanitarian doctrine entered into consideration, and it is one of the first of our Missouri cases in which that doctrine was

fully discussed. But it is great and controlling authority on all the questions covered and decided by it. There Judge WAGNER says (1. c. 553) : "The position in which the deceased placed himself was perhaps unsafe, but it was not prohibited; and the evidence further shows, that owing to the crowded state of the cars, there was no other place he could take. . . . There is nothing to show that he failed to exercise ordinary prudence and care. He might, in all probability, have avoided the catastrophe by being on the alert and exercising extraordinary vigilance, but such was not required of him."

It is true that in the above case the jury had been instructed that they must find that the deceased was exercising ordinary care in riding on the step, but that was as between himself and the railroad company. There is no intimation that the mere act of riding in the unsafe position was in itself negligence. That, however, is what we are asked to hold in this case. The last chance doctrine, which concedes the prior negligence of plaintiff as its predicate, has no place in this case now before us; it is a case which is presented solely on the negligence and carelessness of defendant. It is true that by his answer, defendant charges negligence on the part of plaintiff, but reading that and the instructions which defendant asked, it is apparent that this rests solely on the act of riding on the bumper. Whether that was careless or not, is not conceded, though it was a place of peril. So far as concerns this defendant, it was no concern of his where plaintiff was riding, and he is liable, not under the last chance doctrine, but on the ground of his own negligent and careless act in driving into the car on the bumper of which plaintiff was standing. Suppose plaintiff had been riding on the roof of the car, even as a trespasser and not as a passenger who had paid his fare, and that defendant had been carelessly and negligently firing off a gun and had hit and wounded plaintiff, would the fact of the plaintiff being on the car instead of in it, have excused defendant? Surely not.

The argument of the learned counsel for appellant assumes throughout, that the humanitarian and last chance doctrines are one and the same. This is an erroneous view. The humanitarian doctrine proceeds in accord with the precepts of humanity, which require every person to protect every other person seen to be in, or about to become in, a position of peril, if he may do so, by exercising ordinary care to that end, while exercising as well ordinary care for himself and those in the conveyance of which he has charge. This is true, whether the plaintiff became in peril through his own negligence or otherwise. But the last chance doctrine is not so broad. It proceeds on the theory of prior negligence on the part of plaintiff. Such was the case in Davies v. Mann, 10 Mees. & W. 545. The humanitarian doctrine includes and comprehends that of the last chance. But the last clear chance doctrine does not include the humanitarian rule in its entirety. As its name implies, the last clear chance doctrine concedes the negligence of plaintiff in the first instance but makes for a recovery, notwithstanding such prior negligence of plaintiff, on the distinct ground that the defendant was the one who had the last clear chance to avert the injury and that he omitted to do so. Under such circumstances, the prior negligence of the plaintiff is said to be remote in the chain of causation while that of the defendant, who omitted to exercise ordinary care to save him, is held to be the proximate cause of the hurt. Plaintiff's petition by no intendment can be said to have confessed that he was negligent, but declaring upon the humanitarian rule, as it does, confessed no more than that he was in peril. Such confession alone does not necessarily, much less conclusively, establish, as a matter of law, that his perilous position was a negligent one. It therefore appears that the clause in the petition which was withdrawn was one setting out and pleading the humanitarian doctrine, and that, as we have seen, does not nec-

essarily confess prior negligence on the part of plaintiff; it was not a plea of the last clear chance rule, which does.

There is no pretense that defendant did not see plaintiff. It was his duty to look ahead, and doing that he must have seen plaintiff. [Murphy v. Wabash R. R. Co., 228 Mo. 56, l. c. 82, 128 S. W. 481.] There was nothing between him and plaintiff. It was broad daylight; he was managing a machine that he says he knew how to manage; he saw, as he says, that the car was moving at a rate of two or three miles an hour—hardly at a fast walk—and able and liable to be stopped in an instant, and yet he let his machine run into the car and so injured plaintiff. We hold, as a matter of law, there was no evidence of any carelessness upon the part of plaintiff for the submission of that as an issue to the jury. The fact that defendant pleaded contributory negligence was no proof, nor did it even tend to prove that fact.

Counsel is in error in claiming that invoking the humanitarian doctrine concedes the negligence of plaintiff. It is true that this has been held in several cases where the last chance doctrine alone was involved but a distinction obtains between the two as above pointed out. The humanitarian rule may be invoked by one who in no manner can be held to have been either negligent or careless on his part. Thus in O'Keefe v. United Rys. Co., 124 Mo. App. 613, 101 S. W. 1144, the plaintiff, a letter carrier, was crossing the railway tracks when he was seized with a fit or some like disorder and fell across the track. No car was near; he was in the act of crossing at a street crossing—a public crossing—he was in discharge of his usual duties, in full possession of his faculties; it was daylight; but falling, he lay there unconscious, senseless, oblivious to everything. A car operated by the defendant came along and ran into the unconscious human form lying across the track and injured him seriously. There was not the slightest evidence of plaintiff's negligence; no pretense of it. This court held, on application of the humanitarian doctrine alone,

that defendant was liable. Its employees could have seen, should have seen, were warned by bystanders, but kept on. Like cases have many times arisen, so that it is not the law that a plea of the humanitarian rule is an admission of contributory negligence on the part of the plaintiff. So holding practically disposes of all the errors assigned save as to the verdict and that we will consider later. The instructions given were correct— those refused, properly refused.

It is urged that there was error of the court in permitting plaintiff to amend his petition by striking out the words which we have italicized, it being claimed that this presented a different cause of action from that which was tried. We cannot agree to this contention. Even on the theory of counsel there were two charges of liability in the petition as it stood before amendment, namely, one of carelessness and negligence on the part of defendant, the other involving the humanitarian doctrine. Counsel is in error, therefore, in saying that the petition was based on the humanitarian doctrine alone. Even when a plaintiff sets out several causes of negligence, he is not bound to submit all of them to the jury, but may abandon any one or more of them. It is at the option and at the risk of plaintiff to abandon such of them as he chooses, as well that invoking the benefit of the humanitarian rule as any other; at the risk always, that what remains in his petition is sufficient to state a cause of action. That is the case here. With this part of the petition eliminated there was a distinct averment of actionable carelessness and negligence on the part of defendant, of which the accident was the direct result. The elimination of these words did not in any way affect that part of the petition and was not prejudicial to defendant. If it effected surprise, presenting such a new phase of the case as to find plaintiff unprepared, it was within his power, on proper affidavit,

157 App—13

to have had the submission withdrawn and opportunity given him to meet the case as then made.

Nor do we find any evidence in the case, either of plaintiff or defendant, that can be said to have been improperly admitted, if the humanitarian clause had not been contained in the petition when that evidence was introduced. That is to say, the evidence as introduced was pertinent, relevant and material evidence—evidence competent to be introduced, under the petition as it stood after amendment and with the humanitarian clause eliminated. We find no error in the action of the trial court in permitting the amendment.

It is assigned as error that the verdict is excessive. In view of the testimony as to the extent of the injuries, and that it was in evidence by testimony of the attending surgeon that in a like injury "the bone itself generally heals permanently, but the soft parts near the fracture are likely to prove a more lasting injury," considering the expense of the surgical treatment and the loss of wages, we cannot think that the verdict is the result of prejudice or passion on the part of the jury and that the result of such prejudice and passion was an excessive verdict. There was no need of evidence of malice or wantonness to sustain it. We will not, under the evidence, interfere with the amount of the verdict. The judgment of the circuit court is affirmed. *Nortoni* and *Caulfield, JJ.,* concur.