## COHN et al. v. SOUDERS et al., Appellants.

### Division Two, June 9, 1903.

1. **Amended and Supplemental Petition:** NEW CAUSE OF ACTION: INJUNCTION. The purpose of the original petition in injunction was to restrain the sale of a lot under a deed of trust, but between the time of its issuance and the trial a new ground of enjoining said sale had arisen, and thereupon plaintiff filed an amended petition setting up that ground also, and defendant assigns this as error, as being a statement of a different cause of action. *Held*, that it was not a different cause of action and the court did not err in permitting the plaintiff to file the amended petition, since the relief sought in both petitions was confined to the same subject-matter, and the new facts alleged in the amended petition were not inconsistent with those alleged in the original petition.

2. ———: ———: ———: PRACTICE UNDER THE CODE. The Missouri code provides that a party may be allowed to file an amended or supplemental petition in which are to be set forth all matters necessary for the determination of the action.

3. ———: ———: ———: EQUITY PRACTICE. In the old equity practice supplemental bills were allowed for the purpose of bringing before the court matters occurring after the filing of the original bill.

4. ———: WAIVER: PLEADING OVER. Error of the court in permitting plaintiff to amend his petition is waived by defendant in pleading over after his motion to strike out has been overruled.

5. **Deed of Trust:** DUTY OF MORTGAGOR. Where the deed of trust covers several pieces of property, and the mortgagor sells a part of them, it is his duty to assume and pay the whole debt and thus exonerate the part sold from the burden of the deed of trust.

6. ———: SUBSEQUENT SALE OF PART OF PROPERTY: FORECLOSURE. Where the holder of the notes secured by the deed of trust, proceeds to enforce it against that part of the mortgaged property which the mortgagor has not sold, and at the sale releases that deed of trust from a part of the property which the mortgagor had

not sold, he to that extent releases the deed of trust from the property in which the mortgagor had sold his equity of redemption, and if the value of the property thus released, together with the amount bid at the sale of the rest, equals the amount due on the notes, the whole deed of trust is released, and he can not afterwards enforce it against the property which the mortgagor has assigned to others.

7. ————: ————: ————: CASE STATED. Defendant held notes to the amount of $5,500, which were secured by a deed of trust on two lots, and personal property worth $1,200. The plaintiff had purchased the mortgagor's equity of redemption in one of the lots, and afterwards defendant advertised the other lot and personal property for sale under the deed of trust, and agreed with the mortgagor that if he would dismiss certain actions then pending against him and not bid on the personal property at the sale, he (defendant) would buy it in and make him a present of it. At the sale the mortgagor refrained from bidding and defendant bid $10 or $15 for the personal property, and then announced that he was bidding it in for the mortgagor. The lot which the mortgagor had not assigned was sold to defendant for $4,350, which, together with the $1,200, was more than the debt. *Held*, that before the holder of the notes can proceed to enforce the deed of trust against the lot which the mortgagor had sold to plaintiff, the value of the personal property ($1,200) must be applied on the debt, and when that is done the entire debt is found to be extinguished, and, hence, the deed of trust is cancelled.

Appeal from Butler Circuit Court.—*Hon. Jno. G. Wear,* Judge.

AFFIRMED.

*Henry B. Davis,* for appellants.

(1) The amended petition stated a cause of action essentially different from that stated in the original petition and requiring different or additional proof. Evidence which would have been sufficient to establish the facts alleged in the original petition would not have been sufficient to prove those alleged in the amended bill. Consequently, defendant's motion to strike out the amended petition should have been sustained. Lumpkin v. Collier, 69 Mo. 171. (2) (a) The court erred in finding that the distilling company, after it ac-

quired the notes secured by the deed of trust and prior to the sale of the personal property under said deed, did voluntarily release and surrender the personal property covered by said deed to Miles and his wife. There was no evidence to support said finding. (b) The evidence did not show even a verbal release or discharge. The sale did actually take place. (c) The trust was created by deed and the release or discharge could have been effected only by an instrument in writing. 1 Jones' Mortgages (5 Ed.), sec. 972; Lippold v. Held, 58 Mo. 213. (3) The court erred in ordering in its decree that the value of the personal property, even if it was released by defendants, should be credited on the debt secured by the deed of trust. There is no rule establishing any order of precedence. There is no rule that personal property included in a deed of trust with real estate should first bear the burden of the debt and the real estate go free. When a deed of trust covers several pieces of property there is no rule by which the burden is thrown on one piece to the protection of the others. The order in which they should be sold is a matter of judgment or discretion. The only limitation is that when enough is realized to pay the debt the power of the trustee terminates and he can sell no more. (4) The distilling company did not want the property; it only wanted payment of its debt. It bid in the property and a balance still remained unpaid, and it is entitled to payment out of the remaining security. Parkey v. Veatch, 68 Mo. App. 67; Martin v. Turnbaugh, 153 Mo. 172; Walker v. Goodsill, 54 Mo. App. 631; Hall v. Morgan, 79 Mo. 47.

*E. R. Lentz* for respondents.

(1) There was no error in the court overruling the defendants' motion to strike out the amended petition in this cause. The conduct of the defendants made the amendment necessary. Even if the amended

petition did, as insisted by counsel, state a different cause of action, and was a clear departure from the original petition, yet defendants, after their motion to strike out was overruled, filed their answer to the amended petition, admitting some of its allegations, denying others, and setting up new matter by way of avoidance, and on the issues tendered went to trial. By so doing they accepted the amendment and waived all objections they may have had to it. Mathews v. Perdue, 79 Mo. App. 149. By answering over after their motion to strike out had been overruled, defendants waived their right to have the action of the court in overruling the motion reviewed on this appeal. Bungenstock v. Drainage District, 64 S. W. 155; Thrasher Co. v. Donovan, 147 Mo. 622; Walser v. Wear, 141 Mo. 443; Williams v. Railroad, 112 Mo. 463; Scoville v. Glassner, 79 Mo. 449; Ely v. Porter, 58 Mo. 158; Gale v. Foss, 47 Mo. 276. (2) (a) Defendants' attorney, at the sale and in presence of others, declared that they owned the property and were closing the mortgage to clear it up. The inevitable result of this language was to deter others from bidding at the sale. Anything by a party in interest that chills a sale and prevents free competition among bidders will, on complaint, cause such sale to be set aside. Carson v. Law, 2 Rich. Eq. 296; Herndon v. Gibson, 20 L. R. A. 553; Cocks v. Izzard, 7 Wal. (U. S.) 559. (b) The evidence is clear and unmistakable that so far as the personal property is concerned, there was a combination between Davis, the attorney for defendant, and Miles, to prevent bidding. The conduct of Davis at the sale, beyond question, had the effect of preventing, absolutely, any competition in bidding at the sale. Such conduct invalidates the sale. Jones on Mort., sec. 1912; Dover v. Kennerly, 48 Mo. 148. (c) Here the Morris House property, admitted by defendants to be worth $10,000, was sold and bought in by defendant for $4,591.25, after their attorney, Davis, had publicly declared that it owned both the

mortgage and the property, and were having it sold in order to clear it up. This was sufficient to warrant setting aside the sale. Jones on Mort., sec. 1915; Stoffel v. Schroeder, 62 Mo. 149. (3) The uncontradicted testimony of Miles is, that the personal property included in the deed of trust was worth $1,200 at the time of the sale. His testimony is also uncontradicted, to the effect that defendants' attorney, Davis, solicited him not to bid on the personal property, and he, Davis, would bid it off, at a nominal figure, and make Mrs. Miles a present of it in consideration that they (Miles and his wife), would dismiss certain suits they then had pending against the Nelson Distilling Co. It was so bid off for $10, and given to Mrs. Miles. This not only operated as a release of the personal property to Miles and his wife, but it was a clear diversion of the trust property from the purposes of the trust. Jones on Mort. (3 Ed.), secs. 1620, 1621, and 1631; Calvo v. Davis, 73 N. Y. 216; Boone v. Clark (Ill.), 5 L. R. A. 288; Inglehart v. Crane, 42 Ill. 261; Birnie v. Main, 29 Ark. 595; Hoy v. Bramhall, 19 N. J. Eq. 563; Davis v. Briscoe, 81 Mo. 37; Martin v. Jones, 72 Mo. 26; Buck v. Halloway, 2 J. J. Marsh. 124. (4) The court required that defendants give credit on the debt secured by the deed of trust for the value of the personal property so released. This action of the court was right, and abundantly supported by authority. Jones on Mort. (3 Ed.), sec. 1631; Boone v. Clark (Ill.), 5 L. R. A. 288; Inglehart v. Crane, 42 Ill. 261; Birnie v. Main, 29 Ark. 595; Hoy v. Bramhall, 19 N. J. Eq. 563.

GANTT, P. J.—This suit was instituted in the circuit court of Butler county, Missouri, in February, 1897. The object of the bill was to procure a perpetual injunction against the Nelson Distilling Company and John H. Souders, sheriff of said county, to restrain them from selling the south part of lot number 63 in the city of Poplar Bluff, in Butler county, under a deed

of trust. A temporary writ of injunction was granted on February 25, 1897.

Thereafter, on the next day, the sheriff, as substituted trustee, sold all the remaining property described in the deed of trust, and the Nelson Distilling Company became the purchaser thereof, through its attorney, Mr. H. B. Davis. On May 3, 1897, defendants filed their answer, which was a general denial.

On November 2, 1897, defendants filed their motion to dissolve the injunction, and on the same day plaintiffs filed an amended petition, which in substance alleged that in 1888 Henry H. Miles was the owner of a part of lot 62 in the original town, now city, of Poplar Bluff, on which was located a hotel known as the Morris House, and also the lot in controversy in this suit, designated as part of lot 63 in said city; that Miles borrowed $6,000 from Judge J. W. Emerson and gave three notes, two for $1,000 each, and the third for $4,000; that Miles paid off one of the $1,000 notes; that while Emerson still held said notes and a deed of trust given by Miles and wife to secure the same, Miles sold the part of lot 63 now in suit to one Turner, and that Emerson agreed to release and did release said lot 63 from the incumbrance of said deed of trust; that said deed of trust conveyed not only the part of lot 62 on which the Morris House was situated and said part of lot 63, but all of the furniture and hotel fixtures to secure said notes; that afterwards the title of Turner to the south part of lot 63 passed by mesne conveyances to the plaintiffs, Cohn and Pelz; that afterwards said Morris House property was sold under execution in favor of the Nelson Distilling Company and purchased by said company, and an action of ejectment was brought, under which possession was obtained by said company; that afterwards and when said notes were past due, the Nelson Distilling Company bought of said Emerson and he sold and transferred said notes to said Nelson Distilling Company; that thereafter, Ferguson,

the trustee in said deed of trust, declined to act, and the sheriff, the defendant Souders, at the request of said Nelson Distilling Company, proceeded to advertise all of said property for sale to satisfy said notes. It set up the granting of the injunction as to lot 63, and the sale by the sheriff as trustee of the lot 62, or Morris House property, and all of the hotel furniture; that the hotel property was of the value of $10,000 and the furniture of the value of $1,200; that at the date of the sale the debt on said notes amounted to $5,500; that at said sale the Nelson Distilling Company bid in all of said Morris House property and furniture for $4,591.25; that it was represented at and before said sale by the attorney of the said distilling company, that said sale was being made for the purpose simply of perfecting its title to the Morris House property and clearing it of judgment liens held by others; that the said Nelson Distilling Company voluntarily released from said deed of trust all of the personal property therein conveyed to H. H. Miles and Laura Miles, his wife; that bidders were deterred from bidding at said sale by the assurances of said distilling company, and the amount bid was a mere sham, and no test of the value of said Morris House property; and the same was fraudulent in law; that said Morris House property was of far greater value than the said mortgage debt, and justice and equity required a fair, open and bona fide sale thereof before said lot 63 owned by plaintiff should be subject to any part of said mortgage.

The prayer is in the alternative, either to set aside said sale and order a new sale, at which plaintiff offers and agrees to bid the whole amount of said mortgage debt and costs for said Morris House property, or to adjudge that in no event shall plaintiff's lot 63 be subjected to more than its pro rata share of said debt in the proportion of its value to the remainder of said property, excluding plaintiff's improvements on said

lot 63, which amount to $6,000, and a prayer for general relief.

The answer admits the deed of trust to Emerson, denies that Emerson released or agreed to release said lot 63. Alleges laches on plaintiff's part, and charges that plaintiff has a complete remedy at law.

The evidence tended to establish the following state of facts:

On or about the first day of June, 1888, one Henry H. Miles was the owner of a part of lot 62 in the original town, now city, of Poplar Bluff, Missouri, on which was located a large hotel building, known as the Morris House, and worth about ten thousand dollars. He was also the owner of the lot in controversy in this cause, and known as a part of lot 63, in the said original town of Poplar Bluff. This lot was situated on a steep hillside, was unimproved at the time, and of little value, worth in its then condition from one hundred and fifty to three hundred dollars. He also owned all the hotel, kitchen and dining-room furniture then in and used by the said Morris House. On the said first day of June, 1888, Miles borrowed from Judge Emerson $6,000, and executed therefor his three promissory notes, as follows: One note for $1,000, due one year after date; one note for $1,000, due two years after date; and one note for $4,000, due five years after date, all drawing interest at the rate of ten per cent. And on the same day, to secure the payment of the said notes, the said Miles and his wife conveyed to William Ferguson, as trustee, the property known as the Morris House property, the lot in controversy in this cause, known and described as a part of lot 63 in the said original town of Poplar Bluff, and also all of the hotel, kitchen and dining-room furniture then in the said Morris House. On the 10th day of December, 1888, Miles paid to the said Emerson the first of the said above-described notes. Some time after that, Miles sold that part of lot 63 which was conveyed by the said deed of trust, to

Henry Turner. There was evidence to the effect that at or prior to the time of this sale Emerson had agreed to release the part of lot 63 now in controversy from the lien of the said deed of trust which he held. Emerson denies that he made this agreement. Thereafter, by mesne conveyances, the said Turner conveyed the lot in question to plaintiffs in this cause. Plaintiffs took possession and have ever since been in possession of this lot. That was about 1892, and the lot was then unimproved. Defendants admit that the plaintiffs put all the improvements on the said lot in question, and that the said improvements are worth $6,000. At the time the plaintiffs purchased this property they had no knowledge or information that this property was included in this deed of trust, or that Emerson had any claim upon it, though the mortgage was of record.

The admissions of counsel for defendants show that, some time after the execution of the deed of trust from Miles to Ferguson, the defendant, the Nelson Distilling Company, obtained a judgment in the circuit court of Butler county, against Henry H. Miles and Laura A. Miles, for several hundred dollars; that execution was issued upon this judgment, and the same was levied upon the part of lot 62, in the said town of Poplar Bluff, known as the Morris House property; that the said property was sold under the said execution, and at the sale, the defendant, the Nelson Distilling Company, became the purchaser thereof; that thereafter the defendant, the Nelson Distilling Company, commenced its action of ejectment in the circuit court of Butler county, to recover possession of the said Morris House property, and that such proceedings were had as that the defendant, the Nelson Distilling Company, was put in possession of the said Morris House property under the judgment rendered therein, in the month of September, 1896, and that the said Nelson Distilling Company, remained in possession until after sale under the said deed of trust herein-

after mentioned, and that Henry B. Davis, the attorney for defendants in this case, was at all the time mentioned the attorney and representative of the defendant, the Nelson Distilling Company.

The notes mentioned in the said deed of trust matured on the 1st day of June, 1893. The indorsements thereon show that all interest had been paid on the said notes to March 1, 1896. The following indorsements appear on each of said notes: "Without recourse, J. W. Emerson;" "Without recourse, S. M. Emerson." In his deposition Judge Emerson explains these indorsements by saying that S. M. Emerson was his wife, and that his indorsement thereon was made in order to enable Mrs. Emerson, in case of his death, to handle the said notes without the necessity of taking out letters of administration. That on the first day of December, 1896, the notes secured by the said deed of trust were assigned by him, without recourse, to the defendant, the Nelson Distilling Company, and he had Mrs. Emerson to make the second indorsement thereon, and delivered them to the Nelson Distilling Company. These notes were then long past due.

Afterward, and some time in February, 1897, the defendant, John H. Souders, the then acting sheriff of Butler county, advertised that he would on February 26, 1897, as trustee in the said deed of trust, sell at public vendue, to the highest bidder, for cash in hand, all of the real and personal property described in the deed of trust, and including the said property so bought by these plaintiffs and improved as aforesaid. On the said 25th day of February, 1897, the plaintiffs herein sought and obtained from the judge of the circuit court, in vacation, a temporary restraining order, restraining the defendants from selling or in any manner interfering with the lot or parcel of land so bought and improved by these plaintiffs, until the further order of the court. On the said 26th day of February, 1897, the defendant Souders sold the said property known

as the Morris House property to the Nelson Distilling Company, the defendant herein, for the sum of four thousand five hundred and ninety-one dollars and twenty-five cents. At that time there was due on the notes secured by the said deed of trust $5,000, together with one year's interest on the same, or $5,500. On the day of sale, Henry B. Davis, the attorney for and representative of the defendant, the Nelson Distilling Company, went to Mr. Miles and Mrs. Miles, the grantors in the said deed of trust, and told him not to bid on the personal property at the said sale; that he, Davis, would bid it off and make them, i. e., Mr. and Mrs. Miles, a present of it if they would dismiss certain actions at law which they then had pending against the said Nelson Distilling Company; which proposition was agreed to, and Miles therefore refrained from bidding on the said personal property. At the sale, and while the trustee was crying the sale, Davis bid $10 or $15. The trustee kept on crying the sale, when Davis said, ''That is enough for it; I am going to make Mrs. Miles a present of it.'' The personal property was not present at the place of sale, and was put up in bulk, and all sold together. The undisputed testimony is, that this personal property was worth, at the time of the sale, $1,200.

The court found on the trial of this cause, that the personal property was worth $1,200 at the time of the sale. ''The court further finds that thereafter the whole of the said personal property was, by virtue of said arrangement, released and surrendered by the said Nelson Distilling Company to the said Henry H. and Laura A. Miles, and the court further finds that the defendants should be required to give credit on the said notes for the full value of the said personal property so released by them, to-wit, the sum of $1,200, before being allowed to sell the said property hereinabove described as owned by these plaintiffs; and after giving credit on

the said notes for the said sum of $1,200, the value of the property so released as aforesaid, there remained due on the said notes at the time of the said sale the sum of $4,300. . . . That the said Morris House property was sold at the said sale for the sum of $4,550, and that the said notes were thereby fully paid and satisfied by the sale of the Morris House property.''

The court, by its said decree, made the temporary restraining order perpetual, and forever enjoined the defendants, and each of them, from selling or in any manner interfering with the said property belonging to these plaintiffs under the said deed of trust. And that the said deed of trust be cancelled, set aside and for naught held, in so far as it affects the property of these plaintiffs.

I. The proposition is argued at considerable length that the court erred in permitting plaintiffs to amend their petition; that it was a different cause of action.

The original petition sought a perpetual injunction restraining defendants from selling the part of lot 63 in Poplar Bluff involved in this suit to satisfy the deed of trust of defendant, the Nelson Distilling Company, on the ground that the original holder of said deed of trust, Judge Emerson, had released or agreed to release this lot when Miles, the mortgagor, sold it to Turner, under whom plaintiffs claim and deduce title. That claim was renewed in the amended petition. In the meantime, however, and before the suit came on for trial, a new state of facts not existing when the first petition was filed had arisen.

The defendants being enjoined only from selling lot 63 proceeded to foreclose the deed of trust on the Morris House property, both real and personal. Out of that sale new equities had arisen in addition to those stated in the original bill, to-wit, that by said sale the debt had been fully satisfied in equity, and thus another ground for a perpetual injunction had accrued to plain-

tiffs. Conceding there was much new matter included in the amended petition, it does not follow that the circuit court erred in permitting such amendments to be made. The nature of the action, to-wit, an injunction, was the same in both. The sole purpose of the amended petition was to obtain a perpetual injunction restraining the sale of the lot under the same deed of trust and this was the purpose of the original petition.

The relief sought was confined to the same subject-matter and was the same in each. The new facts alleged were in no manner inconsistent with those alleged in the original petition, and had originated since the filing of the original.

Our civil code of practice recognizes the right to bring before the court new matter arising after the filing of the petition. Section 663, Revised Statutes 1899, provides that a party may be allowed to file an amended or supplemental petition and section 666 requires that such amended or supplemental petition shall set forth in one pleading. all matters necessary for the determination of the action.

In the old equity practice, supplemental bills were allowed to bring matters occurring after the filing of the original bill before the court. [2 Dan'l, Chcy. Pl. & Pr. (6 Am. Ed.), 1516, and notes; Ward v. Davidson, 89 Mo. 455; Bliss on Code Pl., sec. 432.]

We think the amendment was properly allowed by the court. But if it was erroneous, that was waived by the action of defendants in pleading over after their motion to strike out was overruled. [Scovill v. Glasner, 79 Mo. 454; Fuggle v. Hobbs, 42 Mo. 541; Williams v. Railroad, 112 Mo. 485-6; Ely v. Porter, 58 Mo. 158.]

II. The circuit court very properly, we think, held the evidence insufficient to show that Judge Emerson released or agreed to release this south half or part of lot 63, from his deed of trust. This testimony was too inconclusive to base a decree upon it.

III. The equitable doctrine of requiring the Morris House property and the furniture therein to be first sold and applied to the satisfaction of the Emerson mortgage before plaintiffs' lot 63 could be required to liquidate any part of said mortgage, was practically eliminated from this case by the course pursued by the Nelson Distilling Company. Without waiting for the judgment of the court, it availed itself of its unquestioned right to resort in the first instance to the Morris House lot and the personal property. The sheriff sold these and nominally they brought $4,591.25 and the balance only could in any event fall upon plaintiffs' lot 63.

We are concerned with the question whether or not defendants in equity released the personal property to Miles and wife and by so doing released plaintiffs' lot entirely. The equities as between Miles, the mortgagor, and plaintiffs, his grantees, of a part of the mortgaged premises, in this lot 63, are well settled. Whatever the rights of Emerson or his assignee, the distilling company, to resort in the first instance to either or both of the parcels (the Morris House in Miles's hands, or lot 63 in the hands of plaintiffs), it is plain that, according to equitable principles, it was the duty of Miles the mortgagor, to assume and pay the whole debt, and thus exonerate plaintiffs, his grantees, from the lien of the deed of trust.·

But whether the distilling company would have been compelled, as assignee and grantee of the Morris House, to have first exhausted its power of sale of that before moving against plaintiff's lot, we have seen as a matter of fact he did so proceed and caused the Morris House and the personal property to be sold first.

So that we must now invoke another principle of equity and inquire into that sale. For although the equities as between Miles and plaintiffs, did not prevent the distilling company from enforcing its deed of trust for the $5,500, yet after it was advised of the sale of this south half of lot 63 to plaintiffs and of their erec-

tion of a $6,000 building thereon, when it came to foreclose its lien against Miles, the primary debtor and maker of the notes and deed of trust, it released the furniture of Miles, which was included in the deed of trust, property which was primarily liable for the satisfaction of its debt. To that extent it released and discharged the property of plaintiffs, the south part of lot 63, which as between Miles and plaintiffs was secondarily liable only. We regard this as a settled and just rule in most of the States of the Union. Pomeroy in his Equity Jurisprudence, vol. 3, sec. 1226, so announces it, and cites numerous authorities which sustain his text, to which we refer. That the personal property was worth $1,200 stands admitted. That Mr. Davis, counsel for the distilling company, bid it in for $10 under an agreement with Miles, the mortgagor, that if he would not bid on it, he, Davis, would bid it in and give it to him, and that he publicly announced he was bidding it in for Mrs. Miles, and stopped the trustee when he had bid $10 on it, and said that that was enough, we are not permitted to doubt in the light of this record. That this was in equity and in fact an absolute release of $1,200 worth of the mortgaged property to the mortgagor admits of no sort of doubt.

The circuit court so found, and was fully justified in so doing.

The circuit court held that before it could resort to plaintiffs' lot 63 it must first apply the $1,200 to its mortgage, and when that was done it was fully satisfied and thereupon decreed a perpetual injunction against the further enforcement of said mortgage against plaintiffs' lot 63. This was fully justified by the pleadings and evidence, and was a just and equitable disposition of the case, and the decree of the circuit court is affirmed.

All concur.