HAROLD DRAKE, by T. W. IMES, His Next Friend, v. KANSAS CITY
PUBLIC SERVICE COMPANY, a Corporation, Appellant.—63 S. W.
(2d) 75.

Division Two, August 12, 1933.

*Charles L. Carr* and *Watson, Ess, Groner, Barnett & Whittaker* for appellant.

522

*Atwood, Wickersham & Chilcott* for respondent.

COOLEY, C.—This is an action for personal injuries sustained by plaintiff while riding a motorcycle on a public street in Kansas City, Missouri. Plaintiff recovered judgment for $12,000 and defendant appealed. The accident occurred February 26, 1928. Plaintiff, Harold Drake, was then about seventeen years old. He was riding on a motorcycle seated behind one Norman Brown who was driving the machine. His evidence tended to show that the motorcycle was proceeding northward on Summit Street between the tracks of defendant's double track street railway when it ran into a hole in the pavement, causing plaintiff to lose his balance and causing his heel to be caught in the wheel of the motorcycle. He received a serious injury which, because of resulting infection, necessitated two amputations of the leg, the last one near the hip. No point being made here as to the amount of the verdict the character and extent of plaintiff's injury and suffering need not be detailed. The defendant operated a street car system in Kansas City and under its franchise and the city ordinance was required to maintain the pavement at the place where the accident is alleged to have happened. Its obligation so to do is not disputed. Negligence is charged in defendant's alleged failure to maintain the street and pavement at the point in question in reasonably safe condition for travel thereon.

The case has been tried twice. The first trial resulted in a judgment for plaintiff for $5000. On appeal by defendant to the Kansas City Court of Appeals that court reversed the judgment and remanded the case because the trial court had excluded proof offered by defendant of a certain justice of the peace court judgment pleaded by defendant as a bar to plaintiff's action. The Court of Appeals opinion is reported in 41 S. W. (2d) at page 1066. Thereafter plaintiff filed an amended or supplemental petition upon which the cause was tried the second time. The proceedings relative to said supplemental petition first call for consideration.

The suit was filed in the Circuit Court of Jackson County on April 5, 1928. Plaintiff being a minor, T. W. Imes was regularly appointed by that court next friend for plaintiff for the purpose of instituting and prosecuting the suit which was then brought by the same attorneys who have since prosecuted it. On the next day plaintiff's

mother, Stella O'Brien, through the same attorneys, filed suit in the same court for loss of plaintiff's services. Thereafter, on June 18, 1928, in a justice of the peace court in Kansas City, defendant procured the appointment of Stella O'Brien as next friend for the plaintiff and the filing of a suit by plaintiff by said Stella O'Brien as next friend against defendant for $400 damages on account of the injuries suffered by plaintiff in the accident. The justice's record shows suit filed and judgment rendered for plaintiff in said sum of $400 and satisfaction of the judgment entered of record by said Stella O'Brien, next friend, the same day. The attorneys for plaintiff and for Mrs. O'Brien in the circuit court suits were kept in complete ignorance of the justice of the peace court proceedings and had no intimation that an attempt to settle plaintiff's claim was being made or was contemplated until after the judgment in the justice's court had been entered and satisfied of record. Neither plaintiff nor Stella O'Brien was represented or advised by counsel in the justice court proceedings except by counsel for the defendant who acted for both parties, prepared and filed all the pleadings and furnished the justice the forms for his record entries. [Said counsel was not the counsel now representing defendant in this action.] The evidence on the hearing of this branch of the case in the circuit court tends to show that both plaintiff and Stella O'Brien were led by defendant to believe and did believe that it was her individual claim against defendant and not that of plaintiff that was being settled in the justice court. No evidence was heard by the justice.

After the rendition and satisfaction of said judgment in the justice's court defendant filed in the circuit court an amended answer in this case in which it pleaded said judgment of the justice of the peace court as a bar to plaintiff's action. As we are advised by the opinion of the Court of Appeals, the plaintiff pleaded by reply the facts tending to show that the justice's judgment was procured by defendant's fraud and therefore void but did not ask to have it set aside nor, it seems, did he offer proof of the alleged fraud. It appears that the trial court, upon plaintiff's objection to defendant's offer of the justice's judgment in evidence, excluded it. The Court of Appeals held that the justice's judgment, being regular upon its face, was conclusive on the parties and a bar to the prosecution of plaintiff's action ''until set aside,'' and that the trial court had erred in excluding it, for which reason the judgment of the circuit court was reversed and the cause remanded.

Following that reversal the plaintiff tendered and by leave of court filed in the circuit court the supplemental petition now in controversy. It is in two counts. The first is in equity, challenging the validity of the justice's judgment and alleging facts showing its fraudulent character and praying that it be set aside. The second count is at law, pleading plaintiff's cause of action for damages substantially as

pleaded in his original petition. Defendant objected, unavailingly, to the filing of the supplemental petition and then, also unsuccessfully, moved to have it stricken out. It declined to plead further to the first count, filed answer to the second count again pleading the justice's judgment in bar of plaintiff's cause of action stated in the second count, and when the court proceeded to try the first count objected fruitlessly to the introduction of evidence thereunder and declined to participate further in the hearing on said first count.

The court heard evidence on said first count and at the conclusion thereof found the issues thereon for the plaintiff, gave interlocutory judgment declaring the justice's judgment fraudulent and void and ordered that the cause proceed to trial and final judgment on the second count of the petition as though the justice's judgment had not been rendered. After verdict thereon the court entered final judgment on the whole case, setting aside the justice's judgment and for plaintiff on the verdict.

I. No contention is made that either count of the petition fails sufficiently to plead facts authorizing the relief sought if the matters pleaded in the first count can be brought into the case by supplemental petition under the circumstances, nor is it urged that the evidence introduced under said first count does not sustain the court's finding thereon. It unquestionably does. Appellant's sole contention here relating to the supplemental petition and the court's action thereon is that by said first count it brings into the case a new and different cause of action not existing when the suit was filed but based upon facts which occurred thereafter, which appellant asserts cannot be done by supplemental petition in the original suit. In this connection appellant concedes that had the alleged fraudulent judgment been rendered prior to the filing of plaintiff's suit in the circuit court he could properly have joined in his petition a count in equity for cancellation thereof with one at law for his damages. That he could do so was correctly decided by this court in Robison v. Floesch Construction Co., 291 Mo. 34, 236 S. W. 332, 20 A. L. R. 1239. [See, also, Courtney v. Blackwell, 150 Mo. 245, 51 S. W. 668.]

We do not agree with appellant's contention. It may be conceded that a plaintiff cannot recover on a cause of action which did not exist when he sued and that he cannot abandon the cause of action sued on and by supplemental petition substitute another and different cause of action that has arisen since the filing of the suit. But, as will be pointed out more fully hereinafter, he may bring forward subsequently occurring facts that tend to strengthen or reinforce the cause of action originally pleaded. In this case plaintiff was not by his supplemental petition asserting or seeking recovery upon a new cause of action or one different from that originally pleaded. What he sought by both petitions was the recovery of a judgment for his

personal injuries sustained, as he claimed, because of defendant's alleged negligence. The real cause of action upon which plaintiff relied was the same in both petitions. Plaintiff did not, by the first count of the supplemental petition, attempt to set up a new cause of action as a basis for recovery against defendant, but sought thereby only to remove a barrier which defendant attempted to interpose between him and his original objective, a barrier that defendant itself had wrongfully created after the institution of the suit for the very purpose of barring plaintiff's further progress. Had defendant pleaded in bar of plaintiff's action as originally brought "a release, composition, settlement or other discharge of the cause of action sued on," less formal and solemn than a judgment, the plaintiff, by the express terms of Section 782, Revised Statutes 1929 (2 Mo. Stat. Ann. p. 1036), might have challenged its validity for fraud in its procurement by reply and had the issue determined by the jury. The statute makes no distinction between releases, etc., obtained fraudulently before suit brought and those obtained thereafter. Whether a judgment might be thus challenged by reply we need not determine. In any event said Section 782, authorizing submission to the jury of the issue of fraud in procuring a release pleaded as a defense does not deprive plaintiff of the right to invoke the power of a court of equity to cancel the alleged fraudulent judgment. [Roberts v. Central Lead Co., 95 Mo. App. 581, 69 S. W. 630.] And see Woodward v. Woodward, 148 Mo. 241, 49 S. W. 1001; Robison v. Floesch Constr. Co., supra. And so far as concerns the time of its procurement we can see no reason why, when such judgment is pleaded as a bar to a cause of action otherwise maintainable, the plaintiff may not in the same suit assert its invalidity and ask to have it adjudged void because procured by fraud, therefore no bar to his action. Why have to resort to the circumlocution of a separate suit the only purpose of which would be to develop and have adjudged the truth concerning a defense tendered in the pending suit? Or why, in justice and reason, should the plaintiff in a situation such as this, brought about by the defendant's wrongful conduct for the purpose of defeating the plaintiff's action, be required to yield the defendant a measure, at least, of success in its wrongdoing by dismissing his suit, paying costs thereof and perhaps suffering other disadvantages, and bring a new suit to procure the same judgment he sought by the first suit?

By statute, Section 825, Revised Statutes 1929 (2 Mo. Stat. Ann. p. 1101), a party may be allowed, on motion, to file an amended or supplemental petition, answer or reply, alleging facts material to the cause, or praying for any other or different relief, order or judgment.

In Childs v. The Kansas City, St. J. & C. B. Ry. Co., 117 Mo. 414, 436, 23 S. W. 373, it is said that supplemental pleadings were well known in equity "and as many of the sections of our practice act are

taken from rules of equity pleading, it is proper to look to such rules for the purpose of ascertaining what the statute means by a supplemental petition." It was held also that the statute applies to legal as well as equitable actions. Said Section 825 has uniformly been so construed by this court.

In Nave v. Adams, 107 Mo. 414, 421, 17 S. W. 958, 28 Am. St. Rep. 421, it is stated that it is permissible to bring forward by supplemental petition facts that have transpired since the institution of the suit, "which may tend to strengthen or reinforce the cause of action or defense stated in the pleadings before the court." This principle appears to be well established. In the Nave case the plaintiff sued to enjoin the enforcement of a deed of trust. Shortly thereafter another suit, West v. Bundy, was instituted. The parties in Nave v. Adams were parties to West v. Bundy. The case of Nave v. Adams was continued from time to time until West v. Bundy had been decided. Then by supplemental petition the judgment in West v. Bundy was brought in as a controlling fact to sustain the application for a permanent injunction. It was given effect by the trial court in granting the permanent injunction and this court affirmed the judgment.

The court applied the same principle in Cohn v. Souders et al., 175 Mo. 455, 75 S. W. 413. Plaintiff there sued to procure a permanent injunction restraining the sale of certain land under a deed of trust. After suit was filed the defendants sold other land covered by the deed of trust and released some personal property also included in said instrument. Plaintiffs then filed an amended petition in which they alleged such subsequent sale and release and that the money realized from the sale together with the value of the released property satisfied the debt secured by the deed of trust. It was contended that the amended or supplemental petition alleged a different cause of action. This court denied the contention, saying that the purpose of both the original and the amended petitions was the same, viz., to obtain a permanent injunction restraining the sale of the lot under the same deed of trust; that the relief sought was confined to the same subject matter and was the same in each; that the new facts alleged were not inconsistent with those alleged in the original petition and had arisen since the filing of the suit, and that our statute recognizes the right to bring before the court matter arising after the filing of the petition. Other cases, such as Childs v. Ry. Co., supra, recognize the right of a plaintiff to bring into the case by supplemental petition matters occurring after the filing of the suit and which show a continuation of the wrong alleged in the original petition. For further examples of the permissible scope of amended and supplemental pleadings, see Graef v. Bernard, 162 Mass. 300, 38 N. E. 503; Montague v. M. & K. Interurban Ry. Co. (Mo.), 233 S. W. 189; Fire Assn. of Philadelphia v. Strayhorn (Tex. Civ. App.), 165 S. W. 901; Muglers'

Iron Works v. City of New York, 115 N. Y. Supp. 916; Rio Grande Dam & Irr. Co. v. United States, 215 U. S. 266, 30 Sup. Ct. 97, 54 L. Ed. 190; Walker v. Wab. Railroad Co., 193 Mo. 453, 92 S. W. 83.

Defendant in this case invoked the principle stated in Nave v. Adams, supra, when it pleaded the justice's judgment as a bar to plaintiff's action but it attempts to deny plaintiff the right effectively to dispute that plea. That it may not do. We think plaintiff clearly had the right to maintain his cause of action by pleading and proving that the judgment interposed as a bar was fraudulent and void and having it so adjudged. The trial court ruled correctly in permitting the supplemental petition to be filed and refusing to strike it out.

Appellant cites in support of its contention on this point Childs v. Railway, supra; Clothing Co. v. Steidemann, 120 Mo. App. 519, 97 S. W. 220; Heman v. Glann, 129 Mo. 325, 31 S. W. 589; Heard v. Ritchey, 112 Mo. 516, 20 S. W. 799; Payne v. School Dist., 87 Mo. App. 415, and Jennings v. Cherry, 301 Mo. 321, 332, 257 S. W. 438. Those cases are distinguishable from this case on the facts and in our judgment do not sustain appellant's contention here. The Jennings case, however, requires somewhat further notice. It was ejectment. The petition is not set out in the opinion. The defendants, to justify their possession, relied upon a deed and a judgment. By reply the plaintiffs pleaded that the deed and judgment were collusive and fraudulent, but apparently they did not offer to amend their petition or ask to have the deed and judgment canceled and set aside. The court held that under the facts shown the deed could not have been fraudulent and that the judgment was *res adjudicata* of the fact affecting the issue involved in the ejectment suit, but further observed:

"This was a departure in pleading; 'the statement of matter which is not pursuant to the previous pleading of the same party and which does not support and fortify it. The reply or replication must not depart from the complaint, petition or declaration, and it follows that the new cause of action cannot be set up in the reply.'" [301 Mo. l. c. 332.]

Had plaintiffs in that case sought to amend their pleading and attack by an appropriate plea the validity of the deed and judgment relied upon by the defendants as a defense to the plaintiffs' cause of action we think they would have been entitled to do so. We do not think such amendment would have been obnoxious to the rule forbidding amendments changing the cause of action.

II. Appellant contends that reversible error was committed in permitting the testimony of Norman Brown, given at the first trial, to be read from the bill of exceptions then taken and filed. The trial on the second count of the petition was scheduled for and began on April 20, 1932. It sufficiently appears that Brown resided in Kansas

City, some ten miles from the courthouse. He was subpoenaed in Kansas City on April nineteenth to be and appear on the twentieth but when called as a witness was found not to be present. It does not appear that plaintiff or his counsel knew Brown was not present when the case was called for trial or if they did it is clear they expected him to appear. Brown was at the time employed as chauffeur for Dr. Outland, living in Kansas City near the Missouri-Kansas line. When Brown failed to appear when called on April 20, Mr. Imes made diligent search and inquiry to locate him, among other places going to Dr. Outland's home. Imes, testifying on the subject, was not permitted to state what he was told as to Brown's whereabouts by members of the family with whom Brown lived, defendant objecting, successfully, that it would be hearsay. He was permitted without objection to testify that he had then gone to a place about four miles west of the State line (in Kansas) "where I understood he was," but was unable to locate him there. Returning to Kansas City that evening he left word with Dr. Outland to tell Brown to come to the courtroom in the morning, the twenty-first, if the latter returned. Plaintiff also, on the twentieth, had an attachment issued for Brown and delivered to the sheriff, which was returned by that officer showing that he had searched for and failed to find the witness. The plaintiff did not close his case on the twentieth. When court convened the morning following to resume the trial Brown was still absent. Plaintiff and his counsel had heard nothing more of or from him. Thereupon, as a basis for using his former testimony, plaintiff made the showing which we have summarized as to efforts made on the twentieth to locate him and procure his attendance and offered to read his former testimony from the bill of exceptions. Defendant objected on the ground that "this man is within the jurisdiction of this court and is under subpoena." Counsel who offered the objection was asked by the court if he knew where Brown was and replied that he did not "but I know where he was from the record in this case on the nineteenth day of this month," meaning, evidently, from the showing that Brown was subpoenaed in Kansas City on the nineteenth. The court thereupon said: "I feel I have insisted on counsel doing the utmost, and the sheriff's return shows he cannot be located," and overruled the objection.

(a) We think that as against the objection offered by defendant the plaintiff made a sufficient prima facie showing to authorize the admission of the transcript. Objections to evidence must be specific and are to be determined upon the grounds stated therein. [See State v. Click (Mo.), 57 S. W. (2d) 1077, and cases cited.] The only objection offered was that the witness was within the jurisdiction of the court and was under subpoena, the suggestion that he was within the court's jurisdiction being based, as defendant's counsel admitted, solely upon the fact that he had been subpoenaed in Kansas

City. The objection did not refer to the fact that the witness resided in Jackson County or to a failure on the part of plaintiff to make a showing of other statutory grounds for using a deposition or reading from the bill of exceptions. Plaintiff had made, as the court found, diligent but unavailing efforts to locate and produce the witness. There is no suggestion in the record that such efforts were not thorough and made in good faith. There was an intimation, at least, in the evidence offered, that he was out of the State. Plaintiff had invoked the court's jurisdiction and power to bring the witness in by attachment and the sheriff had been unable to find him. Neither plaintiff nor the court had information indicating that it would or might be worth while to issue an attachment directed to the sheriff of any county other than Jackson. In these circumstances we think the court was justified in admitting the transcript.

In Gaul v. Wenger, 19 Mo. 541, cited by appellant, the witness had stated in his deposition that he expected to go to Europe. At the trial more than three months later the deposition was offered and was admitted without any further showing. The court held the statement insufficient to show that he did go or that he went and had not returned, but said that "the court might have been satisfied, after such declaration upon oath, with very slight evidence that he had actually gone and that he had not returned." [See, also, Averitt v. Met. St. Ry. Co., 151 Mo. App. 265, 131 S. W. 752.]

In O'Brien v. St. Louis Transit Co., 212 Mo. 59, 110 S. W. 705, chiefly relied upon by appellant, the objection was that there had been no showing that the witness whose testimony as preserved in a bill of exceptions was offered, was not a resident of the county in which the trial was had. It appears there was no showing of any kind made by the party offering the transcript for not having the witness present.

In Francis v. Willits (Mo. App.), 30 S. W. (2d) 203, the objection offered challenged the failure to show that the witness was not within forty miles of the place of trial, a statutory ground for using the transcript, and it does not appear that an attachment had been unavailingly issued for the witness. We think that case and the other cases cited by appellant are distinguishable from the instant case.

In our instant case in determining this point we are not taking into consideration evidence heard by the court of its own motion upon the hearing of defendant's motion for new trial. The motion was not acted upon at the trial term but was continued to the succeeding term. At that time the court called Brown before it and heard his explanation for his absence from the trial, from which it appeared that on the twentieth of April, the day he should have appeared in answer to the subpoena, he was in fact in Kansas on business for his employer; that upon returning that night he got the message left

for him to appear at court and the next morning, attempting to comply therewith, went first by mistake to the wrong building and finally arrived at the proper building too late and did not go into the courtroom. There was no foundation in the motion for new trial for such hearing (see Taylor v. C. C. C. & St. L. Ry. Co., 333 Mo. 650, 63 S. W. (2d) 69, and cases cited) and, moreover, we think the propriety of the court's action in admitting the transcript must be determined upon the facts appearing at the time it was introduced. [Francis v. Willits, supra.]

(b) In considering this objection on its merits we have not overlooked respondent's contention that it is not preserved in the motion for new trial so as to present it for review, a contention in which we are inclined to think there is merit.

The only allegation in the motion for new trial that could have reference to it is: "The court erred in admitting improper, illegal and incompetent testimony upon the part of the plaintiff, over the objection and exception of defendant." That allegation seems to us to strike at the competency of the testimony itself rather than at the manner in which it was introduced. There is a material difference between an objection to evidence as incompetent and an objection as to the competency of a witness to testify, and it has been held that an allegation in a motion for new trial such as that here is not sufficient to present for review an objection to the competency of the witness to give the testimony. [See Howard v. Hurst, Admr., 163 Mo. App. 641, 147 S. W. 496; Alexander v. Sov. Camp Woodmen of the World, 193 Mo. App. 411, 186 S. W. 2; Big Tarkio Drainage Dist. v. Lamar (Mo. App.), 199 S. W. 727.] In the latter case such allegation in the motion for new trial was held insufficient to assign error in overruling an objection made at the trial that tax books offered in evidence had not been returned to the collector and had not been verified as required by statute; that while assignments in the motion may be in general terms, as held by this court in Wampler v. Railroad, 269 Mo. 464, 190 S. W. 908 (and, we may add, in subsequent cases), yet such general terms must cover the point of objection made in the appellate court, and that the points urged for reversal were not by fair intendment embraced in the motion. In In re McMenamy's Guardianship, 307 Mo. 98, 126, 127, 270 S. W. 662, 671, it is in effect held that an objection to the competency of evidence does not challenge the competency of the witness.

(c) Even if the transcript of Brown's testimony was erroneously admitted we are not persuaded that its admission was prejudicial. Brown corroborated plaintiff as to the location and description of the hole in the pavement and as to the fact that the motorcycle ran into it. Brown's testimony was somewhat more explicit than that of plaintiff as to the exact location of the hole with reference to its distance from the next street intersection north, which is not

# 534

material, and possibly as to its dimensions, but that also does not seem important. Plaintiff's own testimony and that of another witness for him who saw and examined the hole the day after the accident showed clearly that it was between the street car tracks at a point between two cross streets where a concrete pavement joined a continuing cobblestone pavement, as did that of Brown, and at a point where admittedly it was defendant's duty to keep the pavement in repair. Plaintiff's evidence other than Brown's tended to show the existence of the hole at that point for several months prior to and at least two months after the accident and for three weeks or more after suit was brought. Brown did not testify on that point. Photographs showing the hole and the surface of the street at that place were introduced without objection and it seemed to be conceded that they were photographs of the hole described by plaintiff and the street surface thereabout. Some of them were offered by defendant and as we understand the record had been taken at its direction. Defendant offered no evidence to contradict plaintiff's as to the fact that the hole was there and had been before and after the accident, as shown by plaintiff's evidence other than Brown's. When examined by plaintiff about two months after his injury and three weeks after suit had been filed there were no indications of recent repairs in the street or of other holes thereabouts. If the hole in question was not there or was not such as to render the street not reasonably safe for travel, defendant had time after being apprised of plaintiff's contention by the filing of his suit, to have examined the place so as to be able to produce evidence to that effect. No such evidence or any evidence tending to contradict that offered by plaintiff, disregarding Brown's testimony, was offered by defendant.

The erroneous admission of evidence which is merely cumulative when without it there is ample uncontradicted evidence to support the judgment and it is apparent that the result would have been the same without such evidence erroneously admitted, will not justify reversal. [Sec. 1062, R. S. 1929, 2 Mo. Stat. Ann. p. 1352; O'Keefe v. United Rys. Co., 124 Mo. App. 613, 623, 101 S. W. 1144; Shouse v. Dubinsky (Mo. App.), 38 S. W. (2d) 530, 534; Felhauer v. Q. O. & K. C. Railroad Co., 191 Mo. App. 137, 177 S. W. 795, 799; Lane v. Lane, 113 Mo. 504, 21 S. W. 99; Rodney v. McLaughlin, 97 Mo. 426, 9 S. W. 726.] We are inclined to think this rule applicable in the circumstances of this case and that the admission of Brown's testimony, even if error, does not call for reversal of the judgment.

III. Appellant contends that plaintiff's principal Instruction, No. 1, is prejudicially erroneous, in that it imposes upon the defendant the duty to use ordinary care to keep the pavement in an absolutely safe condition rather than in a reasonably safe condition,

thereby in effect making it an insurer. The instruction reads as follows:

"The court instructs the jury that it was the duty of defendant Kansas City Public Service Company to pave the streets between its tracks and between the rails thereof and to exercise ordinary care to keep the same in good condition and repair so that the same would in nowise obstruct or hinder travel upon the street or any part thereof upon which said track or tracks might be located and that any failure on the part of Kansas City Public Service Company to observe and perform this duty would be negligence.

"You are therefore further instructed that if you find and believe from the evidence that on or about February 26, 1928, Summit Street at the time and place referred to in evidence was a public street in and of Kansas City, Missouri, and that defendant's street car tracks were laid thereon and therein and that at said time the paving thereof was broken and cracked and there was a cavity or a hole therein between the northbound car track and the southbound car track at the place referred to in evidence between Twenty-fifth Street and Twenty-sixth Street and between seventy-five and a hundred and fifty feet south of the intersection of said Summit Street with said Twenty-fifth Street, if you so find, and that said broken place or hole, if any, extended along and upon the surface of said street for several feet north and south and was several inches deep, if you so find, and that *by reason thereof said street at said point was dangerous and not reasonably safe* for the ordinary use of the public while traveling thereon and thereover in the exercise of ordinary care for their own safety, if so, and that said condition in said street existed for a number of days before said date and long enough prior thereto that defendant knew or by the exercise of ordinary care would have known thereof and all the facts aforesaid, if you find them to be the facts, before plaintiff was injured, if so, and in time by the exercise of ordinary care to have repaired or remedied said conditions and dangers, if any, before said time and thereby could have prevented plaintiff being injured, if so, and that the defendant failed to exercise ordinary care so to do and was thereby guilty of negligence (as the term 'negligence' is defined in other instructions herein), if so, and that on said February 26, 1928, plaintiff was riding northwardly on said Summit Street on a motorcycle at said place above described, if so, and that then and there said motorcycle ran into the aforesaid hole, if so, and plaintiff was thereby jarred and shaken and his right foot caused to be caught and entangled in the rear wheel of said motorcycle, if so, and that plaintiff was thereby injured, if so, and that his said injuries, if any, resulted directly from said negligence, if any, on the part of defendant, if you so find, and that plaintiff was at all the times referred to in evidence in the exercise of ordinary care for his

own safety, if so, then your verdict must be for plaintiff and against defendant.'' (Italics ours.)

By another instruction, No. 2, given for plaintiff, the court told the jury that ''ordinary care,'' as applied to defendant, meant ''such care as would usually be exercised by an ordinarily careful and prudent person under the same or similar circumstances as those referred to in the evidence,'' and appropriately defined the term as applied to plaintiff, and that ''negligence means any failure on the part of such respective parties to exercise ordinary care.'' No criticism is offered of Instruction No. 2 or of the second paragraph of Instruction No. 1. The objection is to the first paragraph of Instruction No. 1.

The franchise granted defendant and the ordinance passed pursuant thereto require defendant to keep the pavement between its tracks ''in good condition and repair,'' etc., in the language of said first paragraph of the instruction. They were pleaded by plaintiff but we think the effect of such pleading was to show defendant's duty to maintain the street rather than to state violation thereof as the basis for recovery. The petition charges that defendant was negligent ''in suffering and permitting said hole to exist  .  .  .  and in not keeping said street  .  .  .  in a reasonably safe condition for public use.'' We shall therefore, as appellant insists should be done, treat defendant's duty in the premises from the same standpoint as would govern if the city were defendant, holding defendant only to the duty of using ordinary care to keep the street in a reasonably safe condition. Measured by that standard, paragraph 1 of the instruction, standing alone, probably states defendant's duty too broadly. [See Clardy v. K. C. Pub. Serv. Co. (Mo. App.), 42 S. W. (2d) 370; Cooper v. City of Caruthersville (Mo. App.), 264 S. W. 46; Albritton v. Kansas City, 192 Mo. App. 574, 188 S. W. 239.] Appellant cites those cases and a number of others, mostly master and servant cases stating in general terms the doctrine that a master is bound only to use ordinary care to furnish the servant a reasonably safe place to work or reasonably safe appliances; also cases such as State ex rel. Long v. Ellison, 272 Mo. 571, 199 S. W. 984, holding that where the plaintiff's instruction, purporting to cover the whole case and directing a verdict upon a finding of the hypothesized facts, omits an element of negligence essential to recovery, the omission is not cured by a correct instruction given for defendant, there being then irreconcilable conflict in the instructions. The point under consideration in the case at bar, however, is not the same as that decided in State ex rel. v. Ellison.

In Bradley v. C. M. & St. P. Ry. Co., 138 Mo. 293, 307, 39 S. W. 763, an instruction was given for plaintiff, the first part of which told the jury that it was the defendant's duty to use ordinary care and diligence to provide the plaintiff a ''safe place to work.'' The subsequent part of the instruction, however, pointed out the facts

which would create liability. The court said the first part stated the defendant's duty too broadly and condemned, as has often been done, the practice of stating abstract propositions of law in instructions, but held that the subsequent part of the instruction explained, qualified and rendered harmless the error in the first part.

In Munden v. Kansas City, 225 Mo. App. 791, 38 S. W. (2d) 540, an instruction, No. 2, for the plaintiff, directing a verdict on a finding of the facts hypothesized therein, stated defendant's duty too broadly in the first paragraph, as does the one here complained of; but it was held that subsequent portions of the instruction, directing the facts to be found to entitle the plaintiff to a verdict, cured the error. The opinion was written by the same learned Commissione.' who wrote the Clardy case. In the Clardy case the court did not decide whether or not the error in the first paragraph of the instruction was so cured, because of other and fatal error therein.

The principle stated in the Bradley case was applied to instructions containing similarly erroneous general statements in Garard v. Manufacturers' Coal & Coke Co., 207 Mo. 242, 105 S. W. 767; Schulte v. Carmichael-Cryder Co. (Mo. App.), 282 S. W. 181; Hutson v. Missouri Stair Co. (Mo. App.), 296 S. W. 216; Schroeder v. Wells (Mo.), 298 S. W. 806, 810, 811.

In the Clardy, Cooper and Albritton cases, supra, there were no curative directions in the instructions complained of or in other instructions, qualifying and explaining the erroneous general statements and correctly telling the jury the facts to be found to create liability. In the instant case, after the abstract general statement in the first paragraph of the instruction, the second paragraph requires the jury to find certain facts as to the condition of the street and that by reason thereof it was "dangerous and not reasonably safe" (in the conjunctive) and that the defendant knew or should have known thereof in time by the exercise of ordinary care to hav.' repaired it, and failed to exercise such care and was thereby guilty of negligence (as the term negligence is defined in other instructions), etc. The facts required to be found to establish liability and the measure of defendant's duty are correctly set forth in that part o.' the instructions which purports to tell the jury what they must fin ? in order to return a verdict for plaintiff. The first paragraph is thus explained and qualified and the error therein, if it is error, rendere:l harmless.

Appellant argues that the word "negligence" used in the second paragraph refers or may have been understood by the jury to refer to the "negligence" mentioned in the first paragraph. We think it clearly refers to the negligence described in the second paragraph, predicated upon the facts therein required to be found and as defined in Instruction No. 2, and that the instruction was not misleading.

538

In our opinion there is no reversible error in the record. The verdict clearly appears to be for the right party. The judgment of the circuit court is affirmed. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. *Ellison, P. J.,* and *Tipton, J.,* concur; *Leedy, J.,* not sitting.