DORA HARWELL (nee Magill), NELLA SELVIDGE (nee Magill), IRENE
ESTES (nee Magill), GLENN HARWELL, GLADYS FOARD (nee
Harwell), and IDA MAGILL, Widow of HENRY MAGILL, v. W. H.
MAGILL, JOHN MAGILL, GEORGE MAGILL and FRED MAGILL, Ap-
pellants.—153 S. W. (2d) 362.

Division Two, July 25, 1941.

*Lawrence E. Tedrick* for appellants.

*Phillips & Phillips* for respondents.

WESTHUES, C.—Plaintiffs filed this suit in which they asked the court to construe the last will and testament of Henry Magill, deceased, and ascertain and determine title in certain real estate. From the decree of the trial court defendants appealed.

Plaintiffs and defendants constitute all of the legal heirs of Henry Magill. The plaintiffs are: Dora Harwell, Nella Selvidge, Irene Estes, daughters of the deceased; Glenn Harwell and Gladys Foard, grandchildren of deceased, being children of a deceased daughter; and Ida Magill, widow of Henry Magill. The defendants, sons of the deceased, are: W. H., John, George and Fred Magill.

Henry Magill died testate leaving personal property valued at about $75,000, and real estate consisting of about three thousand acres of land and some town lots. This suit does not involve the personal property, nor does it involve about 1900 acres of the land. The controversy is over 1025 acres. The main question in dispute is, what did the testator mean to include by the term "home place" in the will? Plaintiffs say he meant to include all of the 1025 acres. The defendants maintain that the term included only 265 acres of the land. This land was situated in Butler County, Missouri, lying in Sections 11, 12, 13 and 14, Township 26, Range 5, near Black River and Hendrickson, Missouri. The will in question provided as follows:

"SECOND: I give and bequeath to my beloved wife, Addie Magill, the home place upon which we may be residing at the time of my death, with all appurtenances; as many as five milch cows, all household and kitchen furniture, to have and to hold during her natural life, and during her widowhood, but in case the said Addie Magill should marry, then in that event the property hereby devised to her, is to revert to my heirs share and share alike."

By clauses three to eleven, inclusive, the testator made certain bequests which are not involved in this lawsuit. The will then contained the following:

"All the residue of the real property of which I may die seized and possessed, I desire shall be retained intact my said heirs, and that the same be not sold for a period of ten years after my death, then and the same is to be sold to the best advantage, and out of the proceeds of the sale thereof, I desire that my Executors hereinafter named shall pay to each of the devisees, the specific lagacies or be-

quests in money hereinabove specified, and after paying said bequests, I give and bequeath the residue of the proceeds from the sale of said lands to my four sons, share and share alike.''

The bequests referred to in this latter clause were, by mutual consent of all parties interested, paid to the legatees. The will was dated March 30, 1917, and the testator died in the year 1932. The evidence disclosed that in the year 1881 the testator purchased 265 acres of land, known and referred to in the evidence as the ''Keener farm.'' Testator lived on this place until the date of his death. From time to time he purchased land adjoining the Keener place until the year 1912, at which time he owned all of the land in question. One of plaintiffs' witnesses testified as follows:

''I remember the time when Mr. Magill died. He died at his home where he had lived all the time. He must have lived there about 50 years; he bought it in 1881 and moved there not long after that. He died in 1932. He lived in the log house at the foot of the hill, and in the other house, since 1881, and Addie Magill lived there with him. That was all inside of the big fence, fencing in the thousand acres, the present fence. That fence was put around all of this, what is claimed to be the home place, by the plaintiffs about in 1912, and it has not been enlarged any since then.''

There was substantial evidence that the testator farmed the 1025 acres as one unit and often referred to it as the ''home place.'' Olive B. Gomer, at one time assessor for Butler County, testified in part as follows:

''I knew Henry Magill in his life time and assessed his property. I have discussed his property with him and know what property he referred to as the 'Home Place.' That was while I was Assessor. He referred to where his home was as the 'Home Place.' He wanted it put under one assessment so it would all be on the books in one call, but I couldn't do it because it was located in various sections.''

None of the plaintiffs were called to testify.

The defendants did not offer any evidence by disinterested witnesses, and when William Magill, one of the defendants, was called as a witness, plaintiffs objected on the ground that he was not a competent witness to testify to any fact material to the question in dispute. The trial court sustained this objection. The objection was based on Sec. 1887, R. S. Mo. 1939.

The trial court, by its judgment and decree, found that the testator, by the term ''home place,'' meant to include therein all of the 1025 acres. That interpretation is consistent with the terms of the will and the situation of the testator at the time the will was executed and also at the time of his death. The trial court also found that the testator, by the second clause of the will, devised an estate to his wife for life, or during widowhood, with remainder to his heirs; that each of the children was given a one-eighth vested interest in

the home place and each of the two grandchildren a one-sixteenth interest. Appellants insist that the home place, whatever it may contain, was devised to them by the residuary clause of the will. We think the trial court's conclusion was correct. The testator, by the second clause, disposed of the whole fee in the home place. In the clauses following special bequests were made, then followed the residuary clause by which all the land not theretofore devised was ordered to be sold after ten years and the proceeds paid to the four sons. Note that the residuary clause does not read, "all of my real estate," but "all the residue of the real property." Appellants therefore have a one-eighth interest each in remainder in the home place and ▉ not a one-fourth interest as claimed by them.

▉ Appellants also argue that the testator created a contingent remainder by the second clause of the will. Under the ruling in Garrett v. Damron, 110 S. W. (2d) 1112, the estate must be declared a vested remainder. The word "heirs" refers to heirs of the testator at the time of his death. This point was fully discussed in the Garrett case and we are of the opinion that the second clause did not create a contingent remainder.

▉ Plaintiffs in their suit asked the court to enjoin the defendants from committing waste on the land in dispute. At the trial this was abandoned. Appellants, defendants below, now say that this action on the part of the plaintiffs left nothing for the court to do except construe the will, and therefore the case should have been dismissed. It is argued that a court of equity will not entertain jurisdiction for the sole purpose of construing a will where no other relief is sought. If this point has any merit the appellants are estopped to rely thereon. The trial court had jurisdiction of the subject matter and of the parties. The defendants, by their answer, specifically asked for relief. Note their prayer:

"WHEREFORE, the premises considered, defendants pray that the court construe the term 'The Home Place' as used in said will, to mean the Two Hundred Sixty-five (265) acres as hereinabove described, and that it ascertain and determine the right, title, estate and interest of the plaintiffs and defendants respectively, in and to all of said real estate described in plaintiffs' petition, . . ."

It will be noted the defendants asked the court to try the very issue they now say the court should have refused to try and determine. Having thus invoked the jurisdiction of the court to try the issue they cannot now question the court's jurisdiction. [See Winning v. Brown, 340 Mo. 178, 100 S. W. (2d) 303, l. c. 306 (3, 4).]

▉ Appellants also briefed the point that the trial court erred in holding that they were incompetent witnesses under Section 1887, R. S. Mo. 1939. This question was not preserved for our review. In the motion for new trial, paragraph 5, appellants stated:

"The court erred in rejecting competent, relevant and material evidence offered by the Defendants."

This court has, on various occasions, ruled that such an assignment does not preserve for review the question of the competency of a witness to testify. See Drake v. Kansas City Pub. Service Co., 333 Mo. 520, l. c. 533, 63 S. W. (2d) 75, l. c. 81 (8), where this court said:

"There is a material difference between an objection to evidence as incompetent and an objection as to the competency of a witness to testify, and it has been held that an allegation in a motion for new trial such as that here is not sufficient to present for review an objection to the competency of the witness to give the testimony."

We therefore hold that the point was not preserved for our review.

The decree of the trial court is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The forgoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.